## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| KRANOS CORPORATION, et al., | : | Case No. 20-13144 (BLS) |
| | : | |
| Debtor. | : | |

---------------------------------------------------------

| | | |
|---|---|---|
| ROBERT ERB, | : | Adv. Proc. No. <u>21-50997 (BLS)</u> |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KRANOS CORPORATION | : | |
| IN CARE OF ITS CHAPTER 7 TRUSTEE, | : | |
| NIPPON SIGMAX CO., LTD, a Japanese | : | |
| corporation, and SIGMAX AMERICA, Inc., | : | |
| a California corporation, | : | |
| | : | |
| Defendants. | : | |

## MOTION OF ROBERT ERB, FORMER CEO OF THE DEBTOR, FOR AN ORDER EXTENDING AND APPLYING TO HIM THE AUTOMATIC STAY <u>AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>

i

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

SUMMARY OF THE ARGUMENT ........................................................................ 1

BACKGROUND .................................................................................................... 3

ARGUMENT ......................................................................................................... 4

I.      THE COURT SHOULD EXERCISE ITS BROAD AUTHORITY UNDER
        SECTION 105, IN CONJUNCTION WITH THE AUTOMATIC STAY UNDER
        SECTION 362, TO ENJOIN THE ACTION WITH RESPECT TO ERB…..................... 4

        A.      Section 105 Grants this Court Broad Injunctive Authority to Protect the
                Integrity of the Debtor's Estate as Well as the Court's Ability to Exercise the
                Authority Granted to It by Congress .................................................... 4

        B.      The Preliminary Injunction Factors Weigh in Favor of Enjoining the
                Action as to Erb……………………….................................................... 6

                1.      At This Early Stage, There is A Likelihood of Success on the
                        Merits ..................................................................................... 7

                2.      Failure to Enjoin the Action as to Erb Would Irreparably Harm Erb and
                        the Estate by Compromising the Integrity of the Automatic Stay
                        and Prejudicing the Trustee's Case Administration.................................. 8

                        (a)     The Continuation of the Action Will Frustrate the
                                Intent and Purpose of the Automatic Stay and Could
                                Prejudice the Trustee .................................................... 8

                        (b)     Debtor Likely Has An Obligation to Indemnify Erb
                                For Liability in the Action …………………………................. 11

                        (c)     Ongoing Litigation Against Erb in Respect of the Action
                                Will Prejudice the Trustee's Interests in the Bankruptcy as
                                Well as in Future Litigation…………………………….......... 13

                        (d)     Continuing the Action Against Erb Would Divert Key
                                Personnel from the Trustee's Efforts to Successfully
                                Wind Up This Bankruptcy Case.....................................14

3.      The Irreparable Harm that the Estate and Erb Would Suffer in the Absence of an Injunction Substantially Outweighs Any Prejudice to the Plaintiffs ........................................................................................ 15

4.      Injunctive Relief Will Further the Public Interest by Encouraging A Successful Outcome in this Case …..................................................... 16

II.     THE CASE FOR AN INJUNCTION IS BOLSTERED BY THIRD CIRCUIT PRECEDENT THAT RECOGNIZES THAT THE AUTOMATIC STAY APPLIES OF ITS OWN FORCE TO CLAIMS AGAINST THIRD PARTIES THAT SHARE AN IDENTITY OF INTEREST WITH THE DEBTOR ...................... 16

CONCLUSION .................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page**

**CASES**

A.H. Robins Co., Inc. v. Piccinin,
    788 F.2d 994 (4th Cir. 1986)..............................................................5

In re Am. Film Tech., Inc.,
    175 B.R. 847 (Bankr. D. Del. 1994) ....................................................10, 12, 16

In re Baldwin-United Corp.,
    57 B.R. 759 (S.D. Ohio 1985) ...........................................................13

In re Calpine Corp.,
    365 B.R. 401 (S.D.N.Y. 2007) ...........................................................5, 10

In re Cont'l Airlines, Inc.,
    177 B.R. 475 (D. Del. 1993) ..............................................................12

In re Eagle-Picher Indus., Inc.,
    963 F.2d 855 (6th Cir. 1992) .............................................................6

In re Johns-Manville Corp.,
    26 B.R. 420 (Bankr. S.D.N.Y. 1983) ....................................................4

In re Johns-Manville Corp.,
    40 B.R. 219 (S.D.N.Y. 1984) .............................................................14

In re Lazarus Burman Assocs.,
    161 B.R. 891 (Bankr. E.D.N.Y. 1993) .................................................5, 16

In re Loewen Group, Inc., Sec. Litig.,
    2001 U.S. Dist. LEXIS 6482 (E.D. Pa. May 16, 2001) ................................14

In re Lyondell Chem. Co.,
    402 B.R. 571 (Bankr. S.D.N.Y. 2009) ..................................................7

In re Majestic Star Casino, LLC,
    Case No. 09-14136, Adv. No. 10-50841, 2010 Bankr. LEXIS 1874 (Bankr. D.
    Del. Apr. 28, 2010) ........................................................................12

In re Philadelphia Newspapers, LLC,
    407 B.R. 606 (Bankr. E.D. Pa. 2009) ...................................................17

In re PTI Holding Corp.,
    346 B.R. 820 (Bankr. D. Nev. 2006) ................................................................16

In re Saxby's Coffee Worldwide, LLC,
    440 B.R. 369 (Bankr. E.D. Pa. 2009) ................................................................7

In re SN Liquidation, Inc.,
    388 B.R. 579 (Bankr. D. Del. 2008) ...............................................................6, 7

In re Sudbury,
    140 B.R. 461 (Bankr. N.D. Ohio 1992) ........................................................5, 10

In re Union Trust Phila., LLC,
    465 B.R. 765 (Bankr. E.D. Pa. 2011) aff'd, 460 B.R. 644 (E.D. Pa. 2011) ......................7

In re W.R. Grace & Co.,
    412 B.R. 657 (D. Del. 2009) ...............................................................6

In re W.R. Grace & Co.,
    412 B.R. 665 ...............................................................11

McCartney v. Integra Nat'l Bank N.,
    106 F.3d 506 (3d Cir. 1997)...............................................................17

Midway Games, Inc. v. Anonuevo (In re Midway Games, Inc.),
    428 B.R. 327 (Bankr. D. Del. 2010) ...............................................................17

Queenie, Ltd. v. Nygard Int'l,
    321 F.3d 282 (2d Cir. 2003)...............................................................12

Solidus Networks, Inc. v. Excel Innovations, Inc.,
    502 F.3d 1086 (9th Cir. 2007) ...............................................................6

**STATUTES**

11 U.S.C. § 105 ...............................................................5

28 U.S.C. §§ 157 and 1334 ...............................................................1

28 U.S.C. §§ 1408 and 1409 ...............................................................1

11 U.S.C. § 362 ...............................................................4

11 U.S.C. §§ 1107(a) and 1108...............................................................3

**OTHER AUTHORITIES**

Bankruptcy Rule 7065 ...................................................................................................1

Federal Rules of Bankruptcy Procedure 7001(7) and (9) ...........................................18

## **NATURE AND STAGE OF PROCEEDINGS**

Erb files this adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7001(7) and (9) to extend and/or apply the Bankruptcy Code's automatic stay to protect him from continuing to defend the Action.[1]  This adversary proceeding is being initiated in the Debtor's chapter 7 case to safeguard the estate and ensure the integrity of the automatic stay.  This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 1408 and 1409.  The bases for the relief requested herein are sections 362 and 105 of the Bankruptcy Code and Bankruptcy Rule 7065.  This motion is at minimum "related to" the Debtor's bankruptcy case, in that the outcome of the motion could conceivably have an effect on the Debtor's assets/liabilities, the Trustee's freedom of action and his ability to wind down the company, and it would impact the overall administration of the estate.

## **SUMMARY OF THE ARGUMENT**

Erb is a codefendant with the Debtor (and John Does 1-50) in the Action, which was initiated by the filing of a Complaint in California at **Exhibit A** hereto.  He adopts and incorporates the statements in his Complaint filed to initiate this adversary proceeding, and his Affidavit filed on the adversary proceeding docket in support thereof.  Allowing the Plaintiffs to continue to litigate the Action against Erb while the Trustee attempts to quickly and efficiently implement his bankruptcy strategy will compromise the integrity of the automatic stay, result in irreparable prejudice to the Debtor's estate and damage the Trusee's ability to maximize the value of same.

---

[1] Pursuant to local rules, Mr. Erb consents to this Court's entry of a final order addressing this matter.

Courts have consistently exercised their injunctive powers under section 105(a), in combination with the automatic stay of section 362, to enjoin litigation against directors and officers of debtord in suits in which the debtor and its officers and directors are named as codefendants, particularly when the debtor has indemnity obligations to the officers and directors, and the continuation of the litigation against the directors and officers could have preclusive or other prejudicial effects on the debtor.  The Court should do the same here.

Courts considering the propriety of an injunction under section 105(a) apply the traditional four factor test for injunctions, tailored to the unique circumstances of bankruptcy. Each of these factors weighs decidedly in favor of the requested injunctive relief.

With respect to the likelihood of success on the merits, Erb believes that there is a strong prospect for success in the case – which by law refers to *the bankruptcy case*.  The Trustee has already abandoned some inventory, and is conducting normal due diligence in seeking to maximize value for the benefit of stakeholders by performing his statutory function in the case.  To date there is no reason to think the chapter 7 case will be a failure or be dismissed.

Declining to grant the requested injunction would irreparably harm the Trustee's efforts to preserve and maximize value and undercut the integrity of the automatic stay.  There is a risk that under the preclusive doctrines of collateral estoppel and res judicata, the resolution of issues in the Action could be binding upon the estate.  There may well be stare decisis concerns. In addition, because the Debtor likely has an obligation to indemnify its officers and directors, a judgment against Erb would have the effect of fixing indemnification claims against the estate outside of this case. These preclusion and indemnification issues would compel the Trustee to participate—both through witnesses and as a *de facto* party—in the Action, undermining the

automatic stay and distracting his personnel at a time when their efforts must be focused on implementing the Chapter 7 bankruptcy strategy.

At the same time, any harm an injunction may cause would be minimal, particularly when weighed against the prejudice to the Estate if the injunction is not granted. Importantly, an injunction will not permanently deprive the Plaintiffs of an opportunity to pursue the Action; instead, it will just temporarily halt those claims - giving the Trustee time to focus on successfully implementing his strategy to preserve and maximize value.

The balancing of these factors, standing alone, is sufficient to justify injunctive relief. However, the case for an injunction is bolstered by Third Circuit precedent that recognizes that the mandatory stay of section 362 extends of its own force to reach third parties who share such an identity of interest with the debtor that the debtor is in effect the real-party defendant. This is precisely the case here.

### BACKGROUND

On December 18, 2020 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code. The Trustee was duly appointed. Additional information regarding the Debtor and this case, including the Debtor's business lines, corporate structure and financial condition are found in the petition and on the docket.

#### The Plaintiffs and the Defendants

The Action was originally filed on December 4, 2020. The Plaintiffs are one Japanese and one California corporation. The Plaintiffs primarily allege that the defendants, including Erb, breached a written contract to pay for items the Plaintiffs shipped to the Debtor.

Erb is the former CEO of the Debtor and was involved in developing and implementing the Debtor's bankruptcy strategy, though of course the Trustee is now in charge of the estate.

If the Trustee were forced to continue defending the Action, as he would be absent a ruling by this Court, valuable resources will be diverted from the Trustee's bankruptcy-related efforts at a time when, particularly given the timeframe of this case, the estate cannot afford it.

In addition, the Debtor has indemnification obligations to Erb pursuant to its corporate by-laws. Thus, Erb is entitled to indemnification, with the effect that a judgment against him is essentially a judgment against the Debtor itself.

This motion seeks to extend and/or apply the automatic stay that accompanies the Debtor's bankruptcy filing to Erb in the Action.

## **ARGUMENT**

I.    **THE COURT SHOULD EXERCISE ITS BROAD AUTHORITY UNDER SECTION 105, IN CONJUNCTION WITH THE AUTOMATIC STAY UNDER SECTION 362, TO ENJOIN THE ACTION WITH RESPECT TO THE DEFENDANTS.**

A.    **Section 105 Grants this Court Broad Injunctive Authority to Protect the Integrity of Debtors' Estates as Well as the Court's Ability to Exercise the Authority Granted to It by Congress.**

The petition filing triggered section 362(a)'s automatic stay, which forbids the Debtor's creditors from taking any further action to recover from the Debtor's or its property. 11 U.S.C. § 362(a). The purposes of the automatic stay are well established and familiar to this Court:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to

> attempt a repayment or reorganization plan, or simply to be
> relieved of the financial pressures that drove him into bankruptcy.

In re Johns-Manville Corp., 26 B.R. 420, 425 (Bankr. S.D.N.Y. 1983) (quoting S. Rep. No. 95-

989, 95th Cong., 2d Sess. 54-55, U.S. Code Cong. & Admin. News 1978, pp. 5787, 5840-41

(1978)).  Upon entering bankruptcy, a debtor is entitled to a break from all outside litigation so it

can devote its undivided efforts and resources toward the goal of maximizing value and

recoveries for stakeholders.  While it is generally understood that the automatic stay applies only

to actions against the debtor itself, it is equally well understood that a broader class of actions

have the potential to undercut the purposes of the automatic stay.  See In re Sudbury, 140 B.R.

461, 464 (Bankr. N.D. Ohio 1992) ("The continued prosecution of Plaintiffs' actions would

violate the spirit, but not the letter, of section 362 of the Bankruptcy Code . . . . There is no

question but [that] these are precisely the sort of prepetition actions that are expressly banned by

section 362 if the debtor were the defendant. The purpose of section 362 is to afford the debtor

relief from such creditor claims.").

   For this reason, among others, Congress enacted section 105, which enables a

bankruptcy court "to do whatever is 'necessary and appropriate' in order to carry out the

provisions of title 11," including the automatic stay.  Manville, 26 B.R. at 425 (quoting 11

U.S.C. § 105).  Under section 105, courts have broad authority "to enjoin parties other than the

bankrupt from commencing or continuing litigation." A.H. Robins Co., Inc. v. Piccinin, 788 F.2d

994, 1002 (4th Cir. 1986) (internal quotation marks omitted) (quoting In re Otero Mills, Inc., 25

B.R. 1018, 1020 (D.N.M. 1982)).[2]  An injunction as to third-party litigation is appropriate where,

among other things, the "failure to enjoin would affect the bankruptcy estate and would

---

[2] This authority is bolstered by the inherent power of all courts "under their general equity powers and in the
efficient management of [their] dockets to grant" appropriate injunctive relief.  Robins, 788 F.2d at 1003 (citation
omitted).

adversely or detrimentally influence and pressure the debtor through those third parties." <u>Id.</u> at 1003 (citation omitted); <u>see also</u> <u>In re Calpine Corp.</u>, 365 B.R. 401, 409 (S.D.N.Y. 2007) (holding that court may issue a "preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process" (citation omitted)); <u>In re Lazarus Burman Assocs.</u>, 161 B.R. 891, 897 (Bankr. E.D.N.Y. 1993) ("When an action by a creditor of a debtor against a non-debtor third party threatens a debtor's reorganization, the creditor's action may be enjoined pursuant to section 105(a).").

Here, continuation of the Action would deprive the estate of the benefits of the automatic stay, jeopardize the Trustee's ability to successfully implement his bankruptcy strategy, and threaten the integrity of this Court's proceedings. The Court's action is needed to guard against these deleterious results.

**B.      The Preliminary Injunction Factors Weigh in Favor of Enjoining the Action as to the Defendants.**

Courts considering the propriety of an injunction under section 105(a) apply the traditional four factor test for injunctions, tailored to the unique circumstances of bankruptcy. <u>See, e.g.</u>, <u>In re W.R. Grace & Co.</u>, 412 B.R. 657, 665 (D. Del. 2009); <u>see also</u> <u>Solidus Networks, Inc. v. Excel Innovations, Inc.</u>, 502 F.3d 1086, 1094 (9th Cir. 2007) (holding that traditional preliminary injunction standard applies to section 105 injunctions and stating that "[t]he majority of circuits that have reviewed injunctions staying actions against non-debtors have applied the usual preliminary injunction standard.") (citations omitted). Accordingly, courts balance:

1.      the likelihood of success on the merits;

2.      the risk of irreparable harm if the injunction is not granted;

3.      the balance of harms between the debtor and its creditors; and

4.      the public interest in an injunction.

In re W.R. Grace & Co., 412 B.R. 665; In re SN Liquidation, Inc., 388 B.R. 579, 585 (Bankr. D. Del. 2008).

"It is important to recognize that the four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied." In re Eagle-Picher Indus., Inc., 963 F.2d 855, 859 (6th Cir. 1992). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." Id.

**1.     At This Early Stage, There is A Likelihood of Success on the Merits.**

At this early stage, there is a likelihood that the Trustee's bankruptcy strategy will succeed in maximizing recoveries for stakeholders. In the context of bankruptcy proceedings, courts have held that this factor is satisfied, particularly in the early stages of the case, when "the Debtors are proceeding on track." See, e.g., In re Lyondell Chem. Co., 402 B.R. 571, 590 (Bankr. S.D.N.Y. 2009) (finding the likelihood of success factor satisfied and noting that "the Debtors [had] so far been successful in doing everything they've needed to do to date. Whether they will be able to address later issues cannot be determined in the earliest weeks of a case. . . ."). Courts have also found this factor satisfied in cases involving a sale of substantially all of the Debtors' assets. See In re SN Liquidation, Inc., 388 B.R. at 585 (extending the stay to protect the debtors' former managers after the debtors had sold substantially all of their assets and finding that the "[d]ebtors meet each of the requisite [preliminary injunction] factors. . . . The automatic stay clearly applies and the Court will enforce it and enjoin the violation of the stay."). Here there is every indication the Trustee is proceeding on the normal track for a bankruptcy case. See e.g. In re Saxby's Coffee Worldwide, LLC, 440 B.R. 369, 381 (Bankr. E.D. Pa. 2009); In re Union Trust Phila., LLC, 465 B.R. 765, 773 (Bankr. E.D. Pa. 2011) aff'd,

460 B.R. 644 (E.D. Pa. 2011).  This factor, along with the nascent stage of the bankruptcy case, suggest that there is a likelihood of success on the merits.

> **2.      Failure to Enjoin the Action as to Erb Would Irreparably Harm Erb and the Estate by Compromising the Integrity of the Automatic Stay and Prejudicing the Trustee's Case Administration.**

Erb and the estate will be irreparably harmed unless an injunction issues. As explained below, the continuation of the Action against Erb would likely frustrate the intent and purpose of the automatic stay and could prejudice the Trustee.

> **(a)      The Continuation of the Action Will Frustrate the Intent and Purpose of the Automatic Stay and Could Prejudice the Trustee.**

Given the nature of the claims against Erb, even with the Action stayed as to the Debtor, the Trustee will have to be involved in the litigation, including discovery, motions, and witness preparation, and trial - frustrating the intent and purpose of the automatic stay and diverting limited resources from his bankruptcy-related efforts.  The Complaint shows the claims against Erb and those against the Debtor are inextricably intertwined.  Accordingly, the chapter 7 Trustee would have to participate in any such litigation to protect the estate.

For example, in paragraph 23 of the Complaint the Plaintiffs explain how Erb – while acting as the Debtor's CEO - contacted the Plaintiffs – to discuss changing payment terms under an agreement between 3 companies.  It describes the resulting 'teleconferences and emails' between representatives of all 3 companies, and explains how in this process "*Erb* specifically represented and promised **on behalf of [the Debtor]** (bold added) that 1) [*Debtor*] had the financial ability to pay . . .;  and 2) [*Debtor*] would pay . . . ".   And in paragraph 25 of the Complaint, Plaintiffs aver that when ". . . *Erb* and [*Debtor*] made these representations, *Erb* and [*Debtor*] knew that [*Debtor*] lacked the financial ability to pay Plaintiffs . . .".  Further, Plaintiffs

aver that "*Erb* and [*Debtor*] had no intention to [pay for the goods], and that "*Erb* and [*Debtor*] intended to induce Plaintiffs to ship [product, as much as possible] for [*Debtor*] to use for its financial benefit . . . ".   Plaintiff avers this was done so the *Debtor* could "…falsely inflat[e] its financial viability with prospective lenders to obtain new loans . . . by disclosing the [Plaintiffs' products] as 'assets' of [*Debtor*]."   And Plaintiffs aver that "*the Defendants*" – that is, *Erb* and the *Debtor* – had 'secret intentions' to breach the agreement with Plaintiffs.   Paragraph 27 twice cites the alleged misrepresentations of "*Erb* and [the *Debtor*]".   Paragraph 28 notes that ". . . *Erb* execut[ed] the [revised payment plan] "on behalf of [*Debtor*]" but then "[*Debtor*] almost immediately defaulted" and then *the Debtor* defaulted again.   See, e.g, Complaint par's 24, 25, 26, 27, 28.   Plaintiffs openly state that it was the *Debtor* that owed them money – not *Erb* personally – and the *Debtor* breached the agreement, the *Debtor* failed to cure the breach, and the *Debtor* continued to retain possession of the goods and refused to return them.   Complaint par's. 29, 30, 31, 32, 33.   This tale undoubtedly looks very familiar to this Court – a company's management ordered something, found the company was unable to pay for it, then - faced with multiple financial difficulties - commenced a voluntary petition on its behalf.

*As the above makes clear, one of the most knotty parts of the Action will be to unwrap these broad, overlapping claims and try to isolate what acts or omissions were those of the Debtor versus those of Erb personally, or perhaps both*.   The Complaint is, candidly, threadbare as to precisely how Erb is *personally* responsible for these alleged actions, 'secret' bad motives, and/or unlawful omissions.   Erb's position will undoubtedly be that every single act or omission cited above was taken in his capacity as CEO and/or an employee of the Debtor, and that he had no personal interest whatsoever in ordering the goods, negotiating a payment plan,  in the Debtor breaching its obligations, etc.   Put another way, Erb (and others) will likely defend by

pointing to the Debtor's conduct.  This will result in record taint such that documents and testimony pointing to the Debtor's culpable conduct will accumulate and make up a judicial record – without the Trustee having any ability to stop it.

Because the issues in the Action, as described in the Complaint, overlap significantly as between the Debtor and Erb, the estate faces a risk of collateral estoppel if the Action proceeds in the Trustee's absence.  As courts have consistently recognized, "collateral estoppel concerns would require the debtor to defend the actions as fully as if it were a named defendant."  In re Am. Film Tech., Inc., 175 B.R. 847, 851 (Bankr. D. Del. 1994) ("That requires [the Debtors] to do precisely what the automatic stay is intended to excuse it from doing."); see also Sudbury, 140 B.R. at 465 (granting injunction as to non-debtors and observing "[t]he realities of this case are that Plaintiffs' actions [against non-debtors] would require the Debtor to become embroiled in major litigation at a time when its efforts should be directed toward reorganization"); In re Calpine Corp., 354 B.R. 45, 49-50 (Bankr. S.D.N.Y. 2006) aff'd, 365 B.R. 401 (S.D.N.Y. 2007) (noting that "[c]ourts . . . enjoin litigation against non-debtors when an adverse judgment in the litigation will collaterally estop the debtor in subsequent litigation" and extending the automatic stay to co-defendants in light of "a significant risk of collateral estoppel, stare decisis and evidentiary prejudice") (citations omitted)).  Courts have consistently concluded that the risks of collateral estoppel and *res judicata* warrant a stay of third-party litigation precisely because allowing that litigation to proceed would thwart the purposes of the automatic stay.  Sudbury, 140 B.R. at 463 (granting injunctive relief after finding that debtor's liability "may be determined on collateral estoppel principles [by fact determinations reached on the same fact issues] in Plaintiffs' actions" against non-debtors); Manville, 26 B.R. at 426-29

(concluding that risk of collateral estoppel would irreparably injure estates and this warrants issuance of a stay).  The same concerns warrant a stay in this case.

Thus, the continuation of the Action against Erb will likely frustrate the intent and purpose of the automatic stay and, particularly given the compressed timeline in Chapter 7, will probably adversely impact the Trustee's ability to maximize the value of the estate for the benefit of all stakeholders.

> **(b)** **The Debtor Likely Has An Obligation to Indemnify Erb For Liability in the Action.**

The risks posed to the estate in continuing the Action against Erb are not limited to legal doctrines or even to expenditures of time and money on litigation.  Any findings of fact or judgments against Erb as a result of the Action would be tantamount to findings or judgments against the estate, because it likely has blanket indemnity obligations to Erb pursuant to the Debtor's governing documents. The Debtor's by-laws (the relevant page is **Exhibit B** hereto) contain an indemnification clause at article 7, section 2.  This provides that:

> *The [Debtor] shall indemnify its officers, directors, employees and agents to the fullest extent permitted by the [DGCL] and other applicable law*

There is also indemnity for employees under California law at California Labor Code section 2802.  This raises the concern that the Debtor would have liability for Erb's acts or omissions under the doctrine of respondent superior.  Regardless of the source for the claim, there's no serious dispute that Erb will seek indemnification from the Debtor, as soon as he can or must do so.

Importantly, this Court is not here tasked with deciding whether any such

11

indemnification claim will succeed – that is for another day.  The only question here is whether potential claims exist, and the answer is yes.  The Trustee must obviously treat such a claim as real and substantial.  See, e.g., In re W.R. Grace, 384 B.R. 17, 28 (Bankr. D. Del. 2008).

Under these circumstances, an injunction is warranted because the indemnification obligations would make the Debtor the real-party defendant in any suit against Erb and effectively eliminate the protections of the automatic stay.  Robins, 788 F.2d at 999.  Indeed, courts have consistently enjoined actions against non-debtors where, as here, the debtor has a clear obligation to indemnify the non-debtor.  Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287-88 (2d Cir. 2003) (identifying indemnification obligations as an example of where extending the stay is warranted and citing authority extending the stay because of those obligations);  In re Cont'l Airlines, Inc., 177 B.R. 475, 479 (D. Del. 1993) (affirming the bankruptcy court's extension of the stay to the debtor's officers and directors where allegations made clear that the debtor was the real target of the litigation, debtor was obligated to indemnify its directors and officers and several of the officers and director were heavily involved in the debtors' reorganization efforts);  In re Majestic Star Casino, LLC, Case No. 09-14136, Adv. No. 10-50841, 2010 Bankr. LEXIS 1874 (Bankr. D. Del. Apr. 28, 2010) (extending the automatic stay to, among others, present and former directors and officers of debtors named in a state court action because, among other things, (i) senior management would have to defend themselves, significantly interfering with the debtors' reorganization efforts; (ii) the debtors would have to advance defense costs "temporarily diverting much needed funds . . . and funds which they do not have to expend absent their lenders' acquiescence"; (iii) indemnification demands had been made; and (iv) continuation of the action against the officers and directors risked a preclusive effect on the debtors' case);  In re Am. Film Tech., Inc., 175 B.R. at 850, 853 (staying state court

12

claims against both current and former officers and directors of the debtor because the claims exposed the debtor to "both vicarious liability under the doctrine of respondeat superior and the risk of being collaterally stopped from denying liability for its directors' actions," and because there was "an entitlement to indemnification between the debtor and its officers and directors").

These obligations to indemnify cannot be squared with the "breathing spell" contemplated by the automatic stay. Manville, 26 B.R. at 425. Neither are the obligations consistent with bankruptcy's goal of filtering all claims against the debtor's property into a single, consolidated proceeding. Accordingly, an injunction as to Erb in the Action will avoid the irreparable harm to the Debtor that would flow from these indemnification obligations.

> **(c)  Ongoing Litigation Against Erb in Respect of the Action Will Prejudice the Trustee's Interests in the Bankruptcy as Well as in Future Litigation.**

Separate and apart from the risks of stare decisis, collateral estoppel, res judicata, and the Debtor's indemnification obligations, ongoing litigation against Erb based on the Action will create the substantial risk that statements, testimony, and other evidence generated in those proceedings will be used to establish the Debtor's own liability.  Thus, despite the automatic stay, the Trustee will be required to scrupulously guard against evidentiary prejudice by actively participating in the Action, even as he simultaneously attempts to achieve his bankruptcy goals within a very limited timeframe and with limited resources. This is the sort of harm that bankruptcy courts have generally held irreparable. "In a bankruptcy context, irreparable harm may be discerned if 'the action sought to be enjoined would so consume the time, energy and resources of the debtor that it would substantially hinder the debtor's reorganization effort.'" In re Baldwin-United Corp., 57 B.R. 759, 768 (S.D. Ohio 1985) (quoting In re Anje Jewelry Co., Inc., 47 B.R. 485, 487 (E.D.N.Y. 1983)).

Indeed, the burdens of protecting against this evidentiary prejudice were key factors leading to the grant of injunctive relief in Manville. The court succinctly explained the danger as follows:

> [O]nce a witness has testified to a fact, or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding directly involving Manville, whether or not Manville was a party to the record on which the initial testimony was taken. Once an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time. No matter what Lake may stipulate, the thousands of other claimants and cross-claimants who are after Manville's assets, would be entitled to use the product of such discovery.

In re Johns-Manville Corp., 40 B.R. 219, 225 (S.D.N.Y. 1984). These are consequences that the Trustee should not be required to suffer. Accordingly, the risk of evidentiary prejudice presented by the continuation of the Action against the Erb weighs in favor of injunctive relief.

**(d)    Continuing the Action Against the Erb Would Divert Key Personnel from the Trustee's Efforts to Suffcesfully Wind Up this Bankruptcy Case.**

Based on the forgoing, it is clear the Trustee would have no choice but to actively participate in the Action. Erb and other third parties would also need to serve discovery requests upon the Debtor – which means upon the Trustee, requiring his time and resources to respond. And the Plaintiffs would plainly need such discovery, from the Debtor and from others they seek to sue. As detailed above, such litigation would compel the Trustee to engage fully in the defense of the Action, even as he attempts to quickly and efficiently effectuate his bankruptcy strategy, which seeks to preserve and maximize value. This participation would include formulating defense strategies, attending depositions, reviewing documents, preparing witnesses and engaging in any number of other litigation-related tasks. See, e.g., In re Loewen Group, Inc., Sec. Litig., 2001 U.S. Dist. LEXIS 6482, *12-13 (E.D. Pa. May 16, 2001) (applying the stay to

debtor's directors and officers who were non-debtor defendants to keep debtor from engaging in "detailed and burdensome discovery").  Indeed, in a number of respects, beyond Erb's name on the pleadings, the Debtor would be the real-party defendant in the Action, were it allowed to continue as to Erb.  As a result, the Trustee will be distracted from the important task of performing his statutory role.  At bottom, the Court should not permit Plaintiffs to do through Erb what the automatic stay prevents them from doing against the Debtor directly.

> **3.    The Irreparable Harm the Estate and Erb Would Suffer in the Absence of an Injunction Substantially Outweighs Any Prejudice to the Plaintiffs.**

As discussed above, the prejudice the estate would suffer in the absence of an injunction is substantial and irreversible.  Ongoing litigation against Erb poses a risk of binding the estate to any adverse findings and judgments, it will create indemnification obligations, it will likely result in evidentiary prejudice, and it will divert the Trustee's attention from the important and time-consuming tasks of a chapter 7 case.  In short, it will undermine the automatic stay and severely compromise the prospects of a successful conclusion to this case, a result that would harm the Debtor, all creditors, and the Plaintiffs alike.

In contrast, any prejudice to the Plaintiffs from an injunction will be minimal. Importantly, an injunction will not permanently deprive the Plaintiffs of an opportunity to pursue the Action; instead, it will merely halt those claims, giving the Trustee time to achieve his bankruptcy-related goals. A simple delay in time for pursuing their claims is not enough (potential) harm to the Plaintiffs to outweigh the concrete, irreparable harms to the estate noted above.  Indeed, given the anticipated short duration of the Trustee's bankruptcy strategy, the delay to the Plaintiffs may not be significant.  In addition, it is well established that mere delay is insufficient to prevent the issuance of an injunction.  See In re PTI Holding Corp., 346 B.R. 820,

831-32 (Bankr. D. Nev. 2006) (holding that delay of pursuit of guaranty did not constitute sufficient harm to justify denial of injunction); Lazarus Burman, 161 B.R. at 899 (concluding that delay was not sufficient harm to justify denial of injunction because "[t]he preliminary injunction will not invalidate the rights of [the creditor]" but rather "will merely delay the enforcement of those rights"); Am. Film Techs., 175 B.R. at 849 (defendants are "not being asked to forego [their] prosecution against the individual defendants, only to delay it"). Therefore, the balance of harms favors the injunctive relief that Erb has requested.

      **4.**     **Injunctive Relief Will Further the Public Interest by Encouraging A Successful Outcome in these Cases.**

The primary objective of this chapter 7 case is to maximize the value of the estate by promptly and orderly liquidating and monetizing the Debtor's assets. Permitting the continuation of the Action against Erb will create a serious distraction for the Trustee and his team who are responsible for implementing the bankruptcy strategy. Such unnecessary distraction could decrease the Trustee's ability to successfully implement these objectives, which are already being pursued in a challenging environment, by undercutting the benefits of the automatic stay. In addition, allowing the Plaintiffs to move forward against Erb could allow certain creditors to pursue recoveries to the prejudice of other creditors. Thus, the public interest prong also supports the injunctive relief sought herein.

**II.**     **THE CASE FOR AN INJUNCTION IS BOLSTERED BY THIRD CIRCUIT PRECEDENT THAT RECOGNIZES THAT THE AUTOMATIC STAY APPLIES OF ITS OWN FORCE TO CLAIMS AGAINST THIRD PARTIES THAT SHARE AN IDENTITY OF INTEREST WITH THE DEBTOR.**

The facts of this case provide ample basis for this Court to enjoin the Action as to Erb under the Court's section 105 powers. But the case for an injunction is further bolstered by Third Circuit precedent that recognizes that the mandatory stay of section 362 extends of its own

force to reach third parties who share such an identity of interest with the debtors that the debtors are in effect the real-party defendants.  McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 510 (3d Cir. 1997); Robins, 788 F.2d at 999-1000;  Midway Games, Inc. v. Anonuevo (In re Midway Games, Inc.), 428 B.R. 327, 334 (Bankr. D. Del. 2010);  In re Philadelphia Newspapers, LLC, 407 B.R. 606, 616 (Bankr. E.D. Pa. 2009).

       The Third Circuit has followed the Fourth Circuit's decision in Robins by holding that the automatic stay may, in some circumstances, apply to non-debtors. McCartney, 106 F.3d at 510. As the Court of Appeals in Robins observed, "[a]n illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." Robins, 788 F.2d at 999.  Indeed, "[t]o refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute." Id.  This logic applies equally to situations where third-party litigation raises collateral estoppel and res judicata issues for the debtor.  See id.  ("Clearly the debtor's protection must be extended to enjoin litigation against others if the result would be binding upon the debtor's estate, and this is so, whether the debtor is a party or not." (citation and internal quotations omitted)); McCartney, 106 F.3d at 510 (the automatic stay applies when "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.").  This is a situation where "unusual circumstances" call for enjoining the Action.  An "identity of interest" very much exists between Erb and the Debtor.  Their respective alleged liabilities are predicated on the same acts/omissions.

For the reasons discussed above, continuing the Action as to Erb creates the imminent risk of indemnification obligations by, and the application of stare decisis and/or preclusion doctrines against, the Debtor.  Accordingly, whether this Court relies on its broad powers under section 105, or looks to the Fourth Circuit's Robins decision and its progeny in the Third Circuit, it is apparent that the injunctive and declaratory relief sought by Erb in this motion is necessary to protect both the integrity of the bankruptcy proceedings and the Trustee's prospects for a successful resolution of this case.

## **CONCLUSION**

For all the reasons discussed above, Erb respectfully requests that the Court issue an injunction (per Bankruptcy Rule 7001 (7)) prohibiting the continued prosecution of the Action as to Erb while the Debtor's bankruptcy case remains pending, pursuant to sections 105 and 362 of the Bankruptcy Code. Alternatively or additionally, Erb requests that the Court enter an order and judgment declaring (per Bankruptcy Rule 7001 (9)) that the continuation of the Action as to Erb while the bankruptcy case remains pending violates the automatic stay imposed by section 362(a)(1) of the Bankruptcy Code.

Respectfully submitted,

Date:  July 7, 2021
     Wilmington, Delaware

By:___ */s/ James E. Huggett*___
    James E. Huggett (DE Bar 3956)

MARGOLIS EDELSTEIN
300 Delaware Avenue
Suite 800
Wilmington, DE 19801

*Counsel to Robert Erb, the Plaintiff in this Adversary Proceeding (he is also a co-Defendant in the underlying Action in California)*

18