# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 12/04/2020 03:00:01 PM.
30-2020-01173113-CU-BC-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Hailey McMaster, Deputy Clerk.

**FORTIS LLP**
Eric J. Hardeman (SBN 253489)
Adam Harris (SBN 238267)
650 Town Center Drive Suite 1530
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2995
ehardeman@fortislaw.com
aharris@fortislaw.com

Attorneys for Plaintiffs

## SUPERIOR OF COURT OF CALIFORNIA

## COUNTY OF ORANGE

Assigned for All Purposes

Judge Deborah Servino

| | |
|---|---|
| NIPPON SIGMAX CO., LTD, a Japanese corporation; SIGMAX AMERICA, INC. a California corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> KRANOS CORPORATION, INC. dba "Schutt Sports," a Delaware Corporation; ROBERT ERB, an individual; and DOES 1 – 50, <br><br> Defendants. | CASE NO.: 30-2020-01173113-CU-BC-CJC <br><br> **COMPLAINT FOR:** <br><br> 1) Breach of Contract; <br> 2) Breach of Contract; <br> 3) Fraud (Intentional Misrepresentation); <br> 4) Fraud (Intentional Misrepresentation); <br> 5) Fraud (Promise Without Intention To Perform); <br> 6) Fraud (Promise Without Intention to Perform); <br> 7) Conversion; <br> 8) Conversion; <br> 9) Civil Remedy Under Penal Code § 496(c); <br> 10) Goods and Services Rendered; <br> 11) Good and Services Rendered; <br> 12) Trademark Infringement—15 U.S.C. § 1125(a); <br> 13) False Designation of Origin—15 U.S.C. § 1125(a); <br> 14) Common Law Trademark Infringement; <br> 15) Unfair Competition And False Advertising—Cal. Bus. & Prof. Code §§ 17200 *et seq.* & 17500 *et seq.*; <br> 16) Unfair Business Practices—Cal. Bus. & Prof. Code § 17200 *et seq.*; and <br> 17) Accounting |

- 1 -
COMPLAINT

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

## THE PARTIES

1.      Plaintiff Nippon Sigmax Co. Ltd. ("Nippon Sigmax") is a corporation organized under the laws of Japan, with its principal place of business in Tokyo, Japan.

2.      Plaintiff Sigmax America, Inc. ("Sigmax America") is a corporation incorporated under the laws of the State of California, with its principal place of business in Irvine, California. Nippon Sigmax and Sigmax America are collectively referred to herein as ("Plaintiffs"). Sigmax America is a wholly owned subsidiary of Nippon Sigmax.

3.      Defendant Kranos Corporation Inc. d/b/a Schutt Sports ("Schutt") is a corporation organized under the laws of the State of Delaware, with its principal place of business in Illinois.

4.      Plaintiffs are informed and believe, and based thereon allege that Defendant Robert Erb ("Erb") is an individual residing in State of New York. At all times relevant herein, Erb was the Chief Executive Officer for Schutt. Schutt and Erb are collectively referred to herein as ("Defendants").

5.      Plaintiffs are unaware of the true names and identities of Defendants named as Does 1 – 50, and therefore sue them by such fictitious names. Plaintiffs are informed and believe, and based thereon allege that each such fictitious Defendant is in some way responsible for, or participated in, or contributed to, the matters and things of which Plaintiffs complain herein, and have legal responsibilities therefore. When the exact nature and identity of each such fictitious Defendant is ascertained by Plaintiffs, Plaintiffs will amend this Complaint. Any reference herein to "Defendant" or "Defendants" includes Does 1 – 50, and each of them.

6.      At all times relevant hereto, each of the Defendants were the agent, representative, co-conspirator and/or otherwise acting on behalf and in connection with the other Defendant(s) with the knowledge and consent of each of them.

## JURISDICTION AND VENUE

7.      Jurisdiction over each Defendant in California and venue in Orange County is proper because Schutt agreed via a forum selection clause in the contract at issue to jurisdiction and venue in Orange County, California, and because Erb's conduct at issue herein was closely related to the contractual relationship such that he is also bound by the forum selection clause. Jurisdiction

over Defendants is independently proper because Sigmax America is a California corporation with its principal place of business in Orange County, California, and with respect to the causes of action brought by Sigmax America, Defendants purposefully directed their actions toward Sigmax America such that it was foreseeable that Sigmax America would be harmed in California. Sigmax America also experienced damages in California directly arising out of Defendants' contacts with Sigmax America in California, and Sigmax America's causes of action directly arise out of Defendants' contacts with Sigmax America in California.

## FACTUAL ALLEGATIONS

**A.    Nippon Sigmax's Business And Goodwill Of Its ZAMST Brand**

8.    Nippon Sigmax is an international company based in Japan whose business involves, *inter alia*, the development, design, manufacture, sale, and export and import of supports, braces, icing products, insoles, and other related support devices for athletes and sports (hereinafter the "ZAMST Products").

9.    All times herein relevant, Nippon Sigmax has continually used the name "ZAMST" as a trade name and its trademark connection with design, manufacture, sale, and export and import of its Sport Support Products, registered on the Principal Register of the United States Patent and Trademark Office (hereinafter the "ZAMST Marks") as follows:

Registration No. 3846587, ZAMST, September 7, 2010;

Registration No. 3808552, ZAMST, June 22, 2010;

Registration No. 4091223, ZAMST, January 24, 2012;

Registration Nos. 4096435, ZAMST, February 7, 2012; and

Registration No. 4779698, ZAMST, July 28, 2015.

10.    Since the ZAMST Marks' first in commerce within the United States (which use commenced in or around 2010), the trade name "ZAMST" and the ZAMST Mark have been associated with the ZAMST Products. As a result, ZAMST owns common law trade name rights and trademark rights in the name "ZAMST" and the ZAMST Marks. By virtue of the long use,

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

1  promotion, and the resulting fine public reputation of the trade name "ZAMST," there exists a

2  secondary meaning in the name "ZAMST" and the ZAMST Marks such that the public associates

3  the goods sold in connection with the "ZAMST" trade name and the ZAMST Marks as originating

4  from a single source.

5       11.    Nippon Sigmax has a vital economic interest in protecting the ZAMST name and the

6  ZAMST Marks. The preservation and protection of Nippon Sigmax's ZAMST trade name and the

7  ZAMST Marks are essential to the maintenance of the quality and consistency of the ZAMST

8  Products.

9  **B.**   **The Distribution Agreement Between Nippon Sigmax And Schutt**

10       12.    On or about October 3, 2018, Nippon Sigmax entered into a distribution agreement

11  with (the "Distribution Agreement") Schutt for Schutt to become the exclusive distributor of the

12  ZAMST Products in North America. A true and correct copy of the Distribution Agreement is

13  attached hereto as Exhibit "A."

14       13.    Pursuant to the Distribution Agreement, Nippon Sigmax agreed to sell Schutt the

15  ZAMST Products and granted Schutt the right to advertise, market, and sell the ZAMST Products in

16  North America to retailers and end user customers through the use of the ZAMST trade name and

17  the ZAMST Marks. In exchange therefore, Schutt agreed to pay Nippon Sigmax for the wholesale

18  purchase of the ZAMST Products Schutt ordered from Nippon Sigmax based on varying payment

19  timetables specified within the Distribution Agreement according to the type of the ZAMST

20  Products sold.

21  **C.**   **The Terms Of The Distribution Agreement**

22       14.    Pursuant to Section 2.1 of the Distribution Agreement, Schutt was appointed as

23  Nippon Sigmax's exclusive distributor of the ZAMST Products within the designated territory,

24  which was the whole of North America. [Ex. A at p. 2, § 2.1].

25       15.    Pursuant to Section 3.1 of the Distribution Agreement, and in order to acquire the

26  ZAMST Products from Nippon Sigmax for subsequent resale, Schutt was obligated to place

27  orders for the ZAMST Products with Nippon Sigmax. [Ex A at p. 5 at § 3.1]. Upon the receipt

28  and acceptance of the ZAMST Products pursuant to such orders, Schutt was required under

FORTIS LLP
650 TOWN CENTER DRIVE , SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 · FAX 714-795-2995

1    Section 9.2 of the Distribution Agreement to make payment to Nippon Sigmax on these orders

2    within the timeframe set forth within Exhibit "E" to the Distribution Agreement.   [Ex. A at p. 8,

3    § 2.1 & at p. 32].

4         16.    Pursuant to Section 13 of the Distribution Agreement, Nippon Sigmax granted to

5    Schutt during the life of the Distribution Agreement, a non-exclusive royalty free license to use

6    the ZAMST name and the ZAMST Marks, as well as other Nippon Sigmax intellectual property.

7    [Ex. A at pp. 12 – 13, § 13].  Significantly, Section 13 of the Distribution Agreement provided

8    that upon expiration or termination of the Distribution Agreement, Schutt "will immediately

9    cease all display, or display any name, mark or logo which is, or any part of which is, similar to,

10   or confusing with, any [ZAMST Marks] or other name, mark, logo or designation associated

11   with any [ZAMST Products]." [Id. at p. 13, § 13].  In other words, Schutt's license to use the

12   ZAMST Marks and the ZAMST trade name did not survive termination of the Distribution

13   Agreement and Schutt was required to discontinue using the ZAMST Marks and the ZAMST

14   trade name upon termination or expiration of the Distribution Agreement. [Ibid.].

15        17.    Pursuant to Section 17 of the Distribution Agreement, Schutt agreed that any

16   intellectual property (including, but not limited to, copyrightable works and trade secrets)

17   received by Schutt from Nippon Sigmax or developed by Schutt in connection with the

18   Distribution Agreement would be "the sole property of [Nippon Sigmax]." [Id. at p. 15, § 17].

19        18.    Section 10.2 of the Distribution Agreement provides that upon a material breach

20   of the Distribution Agreement, the non-breaching party may provide notice to demand that the

21   breaching party cure the breach within 30 days.  Section 10.2 of the Distribution Agreement also

22   provided that the non-breaching party could elect to provide notice of termination if the

23   breaching party did not cure within 30-days of receiving a notice of breach under Section 10.2,

24   upon such notice, the Distribution Agreement would be terminated. [Ex. A at p. 9, § 10.2].

25        19.    Pursuant to Section 10.5 of the Distribution Agreement, all amounts owing by

26   Schutt to Nippon Sigmax pursuant to the Distribution Agreement become immediately due and

27   payable upon a termination in accordance with Section 10.2. [Ex. A at p. 10, § 10.5].

28

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-939-3800 • FAX 714-795-2895

- 5 -
COMPLAINT

20.     Upon a termination or expiration, Section 10.7 of the Distribution Agreement provides that Schutt must return to Nippon Sigmax all marketing and other materials for the ZAMST Products it received from Nippon Sigmax and delete any digital data versions of such materials.  [Ex. A at p. 11, § 10.7(i)].  The Distribution Agreement also provides that upon expiration or termination, Nippon Sigmax may provide written notice to Schutt to determine which unsold ZAMST Products should be returned to Nippon Sigmax and which ZAMST Products could be liquidated and sold by Schutt, and to request that the unsold ZAMST Products be returned to Nippon Sigmax.  [Id., § 10.7(ii)].  The Distribution Agreement also requires Schutt to cease marketing the ZAMST Products and cease soliciting orders for the ZAMST Products after a termination pursuant to Section 10.2. [Id., § 10.7(iii).].

21.     Section 29 of the Distribution Agreement provides for California choice of law in any proceeding arising out of or relating to the Distribution Agreement, and a forum selection clause that requires any and all disputes to be brought in a Court of competent jurisdiction in Orange County, California.  [Ex. A at p. 19, § 29].  Both Nippon Sigmax and Schutt also consented to personal jurisdiction in California in any such proceeding via Section 29 of the Distribution Agreement.  [Id.].

**D.   Schutt Defaults On Its Obligations Under The Distribution Agreement And The Parties Execute The Payment Plan Addendum Thereto.**

22.     Pursuant to the Distribution Agreement, Schutt ordered millions of dollars' worth of the ZAMST Products from Nippon Sigmax, and Nippon Sigmax fulfilled and shipped these orders to Schutt.  However, Schutt was unable to make the full amount of the payments for these orders required of Schutt under the Distribution Agreement within the timeframes contemplated by Exhibit E to the Distribution Agreement.  By October 2019, Schutt was in arrears on its obligations to pay for the ZAMST Products Schutt ordered pursuant to the Distribution Agreement in excess of $1,655,000.

23.     On or about October 7, 2019, Schutt's CEO, Erb, contacted Plaintiffs' representative Hajime Takada ("Mr. Takada") to solicit a change in the payment plan schedule as set forth within Exhibit E of the Distribution.  This prompted multiple teleconferences and e-

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

1  mails between Erb, Mr. Takada, and other representatives of Plaintiffs wherein the parties

2  negotiated a new proposed payment plan, and Erb specifically represented and promised on

3  behalf of Schutt that: 1) Schutt had the financial ability to pay in accordance with the new

4  proposed payment plan; and; 2) Schutt would pay in accordance with the new proposed payment

5  plan. This resulted in the execution of a payment plan addendum to the Distribution Agreement

6  incorporating the agreed upon new proposed payment plan (the "Payment Plan Addendum")

7  between Schutt, Nippon Sigmax, and Sigmax America on or about November 11, 2020, a true

8  and correct copy of which is attached hereto as Exhibit "B."

9         24.    Significantly, the proposed payment plan anticipated not only payments to

10  Nippon Sigmax, but to Sigmax America for other ZAMST Products within Sigmax America's

11  possession that were ultimately shipped to Schutt by Sigmax America pursuant to the Payment

12  Plan Addendum.

13         25.    At the time that Erb and Schutt made these representations, Erb and Schutt knew

14  that Schutt lacked the financial ability to pay Plaintiffs in accordance with the schedule set forth

15  within the Payment Plan Addendum. At the time Erb and Schutt made these promises to pay

16  Nippon Sigmax and Sigmax America in accordance with the Payment Plan Addendum, Erb and

17  Schutt had no intention that Schutt would abide by these promises. Instead, Erb and Schutt

18  intended to induce Plaintiffs to ship as much additional ZAMST Products as possible for Schutt

19  to use for its financial benefit without any intention of paying Plaintiffs for the ZAMST

20  Products. Plaintiffs are also informed and believe, and based thereon allege that this was done

21  for purposes of Schutt falsely inflating its financial viability with prospective lenders to obtain

22  new loans thereafter by disclosing the ZAMST Products as "assets" of Schutt when Schutt had

23  yet to pay Plaintiffs for the ZAMST Products.

24         26.    At the time Erb and Schutt made these representations and promises, Plaintiffs

25  were ignorant of their falsity and of Defendants' secret intention not to perform, and could not

26  have in the exercise of reasonable diligence discovered the falsity of Defendants' representations

27  that Schutt had the financial ability to pay or Defendants' secret intention not to perform.

28

27.    In reliance on Erb's and Schutt's misrepresentations, Nippon Sigmax and Sigmax America entered into the Payment Plan Addendum and transferred millions of dollars' worth of ZAMST Products to Schutt thereafter.  Had Nippon Sigmax and Sigmax America known the truth of Defendants' misrepresentations or of Defendants' secret intention not to perform, they would not have entered into the Payment Plan Addendum and would not have shipped any more ZAMST Products to Schutt.

**E.    Schutt Almost Immediately Defaults On The Payment Plan Addendum And Fails To Makes Payments Required Under The Payment Plan Addendum Thereafter**

28.    Despite Erb executing the Payment Plan Addendum on behalf of Schutt on or about November 11, 2019, Schutt almost immediately defaulted on the very same payment plan it had proposed within the Payment Plan Addendum, and Schutt defaulted on the Payment Plan Addendum after making only a single payment pursuant thereto on or about December 11, 2019.

29.    By July 2020, there was at least $493,053 owed by Schutt to Nippon Sigmax under the Distribution Agreement and the Payment Plan Addendum.  By July 2020, there was also at least $2,116,118 owed by Schutt under the Distribution Agreement and Payment Plan Addendum to Sigmax America.

30.    Accordingly, Plaintiffs provided a demand to cure to Schutt through counsel on July 8, 2020 pursuant to Section 10.2 of the Distribution Agreement demanding that Schutt cure and pay these sums within thirty days of receipt of the letter.  However, Schutt failed to do so within thirty days.

31.    In light of Schutt's failure to cure a material breach, Plaintiffs provided Schutt with a notice of termination pursuant to Section 10.2 of the Distribution Agreement in a letter dated September 6, 2020 (the "Notice of Termination Letter"), informing Schutt that the Distribution Agreement was terminated given Schutt's failure to cure.  Within this letter, Plaintiffs also requested as follows:

a)    That Schutt pay all amounts owing under the Distribution Agreement and the Payment Plan Addendum;

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 · FAX 714-795-2995

FORTIS LLP
650 TOWN CENTER DRIVE , SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

b)    That Schutt return to Nippon Sigmax all physical marketing materials given to it by Nippon Sigmax, confirm its deletion of any and all electronic data of such materials, and return access to the ZAMST website to Nippon Sigmax;

c)    That Schutt return any unsold ZAMST Products to Plaintiffs pursuant to Section 10.7(ii);

d)    That Schutt cease marketing the ZAMST Products and discontinue soliciting orders for the ZAMST Products as required by Section 10.7(iii);

e)    That Schutt turn over all customer or distributor lists and contact information created by Schutt pursuant to the Distribution Agreement or provided to Schutt by Sigmax pursuant to Section 17 of the Distribution Agreement; and

f)    That Schutt stop using Nippon Sigmax's trademarks pursuant to Section 13 of the Distribution Agreement.

32.    Schutt failed to abide by any of the demands and requests Plaintiffs made within the Notice of Termination Letter.

33.    Instead, Schutt has retained possession of the unsold ZAMST Products and has refused to return them to Plaintiffs.

34.    In addition, Schutt continued to use the ZAMST Marks and the ZAMST tradename in connection with advertising, including, but not limited to, displaying the ZAMST Products on its Amazon.com webpage after receiving the Notice of Termination Letter and continued to hold itself out as an authorized ZAMST distributor.  To this point, Schutt has accepted orders of ZAMST Products as recently as on or about November 3, 2020 from retailers using the ZAMST Marks as part of the purchase order.  In short, Schutt has flouted Plaintiffs' requests and continued to act like an authorized ZAMST Distributor and to hold itself out as a authorized ZAMST Distributor long after the Distribution Agreement was terminated.

35.    As a direct and proximate result of the forgoing actions by Schutt and Erb, Plaintiffs have been damaged in an amount according to proof at trial in excess of the minimum jurisdiction of this Court.

36.    The foregoing actions with respect to the ZAMST Marks and Nippon Sigmax's other intellectual property have caused, and are continuing to cause Plaintiffs irreparable harm for which there is no adequate remedy at law.  Accordingly, Plaintiffs seek preliminary and permanent injunctive relief to enjoin Schutt's from continuing to use the ZAMST Marks and enjoin it from continuing to hold itself out as a ZAMST distributor.

## FIRST CAUSE OF ACTION

### Breach of Contract

(Asserted against Schutt and DOES 1 – 50 by Nippon Sigmax)

37.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 36 as though fully set forth herein.

38.    On or about October 3, 2018, Nippon Sigmax entered into the Distribution Agreement with Schutt for Schutt to become the exclusive distributor of the ZAMST Products in North America.  Pursuant to the Distribution Agreement, Nippon Sigmax agreed to sell Schutt the ZAMST Products and grant Schutt the right to advertise, market, and sell the ZAMST Products in North America to retailers and end user customers through the use of the ZAMST trade name and the ZAMST Marks.  In exchange therefore, Schutt agreed to pay Nippon Sigmax for the wholesale purchase of the ZAMST Products it ordered from Nippon Sigmax based varying timetables specified within the Distribution Agreement according to the type of the ZAMST Products sold.

39.    On or about November 11, 2020, Schutt, Nippon Sigmax, and Sigmax America entered into the Payment Plan Addendum, which modified the payment schedule of the Distribution Agreement.

40.    The Distribution Agreement and the Payment Plan Addendum thereto constitutes an enforceable agreement.

41.    Nippon Sigmax has performed or substantially performed all obligations required of it under the Distribution Agreement and the Payment Plan Addendum, except those

FORTIS LLP
650 TOWN CENTER DRIVE , SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-939-3800 • FAX 714-795-2995

- 10 -

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 · FAX 714-795-2995

obligations that the performance of which is excused by Schutt's breaches of the Distribution Agreement and the Payment Plan Addendum.

42.     Schutt and Does 1 – 50, and each of them, materially breached the Distribution Agreement and the Payment Plan Addendum by, among other things:

    a)     Failing to pay all amounts due and owing to Nippon Sigmax in violation Section 9.2 of the Distribution Agreement and the Payment Plan Addendum;

    b)     Failing to pay all amounts due and owing to Nippon Sigmax upon termination of in violation of Section 10.5 of the Distribution Agreement;

    c)     Failing to return to Nippon Sigmax all physical marketing materials given to it by Nippon Sigmax, confirm its deletion of any and all electronic data of such materials, and return access to the ZAMST website to Nippon Sigmax in violation of Section 10.7(i);

    d)     Failing to return the unsold ZAMST Products shipped to Schutt by Nippon Sigmax after Plaintiffs requested such return post-termination in violation of Section 10.7(ii) of the Distribution Agreement;

    e)     Continuing to market ZAMST Products, continuing to solicit orders for ZAMST Products, continuing to use the ZAMST Marks in connection with the advertisement and sale of the ZAMST Products, and continuing to hold itself out as an authorized ZAMST distributor in violation of Sections 10.7(iii) and 13 of the Distribution Agreement; and

    f)     Failing to turn over all customer or distributor lists created by Schutt or provided to Schutt by Nippon Sigmax in violation of Section 17 of the Distribution Agreement.

43.     As a direct and proximate result of the foregoing breaches, Nippon Sigmax has been damaged in an amount according to proof at trial, and will continue to suffer damages as a result of the foregoing breaches.

44.     Nippon Sigmax has no adequate remedy at law for Schutt's and DOES 1 – 50's breaches set forth above, including, but not limited to, the breaches via the continued use of and

1    infringement on the ZAMST Marks. Therefore, in addition to its claims for payments due and

2    owing, Nippon Sigmax is entitled to preliminary and permanent injunctive relief enjoining

3    Schutt, DOES 1 – 50, and all those working in concert with them from breaching the post-

4    termination obligations, to continuing to use the ZAMST Marks, continuing to advertise the

5    ZAMST Products for sale, continuing to hold itself out as ZAMST distributor, and from selling,

6    disposing of, or transferring title to any of the unsold ZAMST Products Nippon Sigmax has

7    requested the return of.

8    **SECOND CAUSE OF ACTION**

9    **Breach of Contract**

10   (Asserted against Schutt and DOES 1 – 50 by Sigmax America)

11   45.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 44 as

12   though fully set forth herein.

13   46.    On or about October 3, 2018, Nippon Sigmax entered into a Distribution Agreement

14   with Schutt for Schutt to become the exclusive distributor of the ZAMST Products in North

15   America. Pursuant to the Distribution Agreement, Nippon Sigmax agreed to sell Schutt the

16   ZAMST Products and grant Schutt the right to advertise, market, and sell the ZAMST Products in

17   North America to retailers and end user customers through the use of the ZAMST trade name and

18   the ZAMST Marks. In exchange therefore, Schutt agreed to pay Nippon Sigmax for the wholesale

19   purchase of the ZAMST Products based varying timetables specified within the Distribution

20   Agreement according to the type of the ZAMST Products sold.

21   47.    On or about November 11, 2020, Schutt, Nippon Sigmax, and Sigmax America

22   entered into the Payment Plan Addendum, which modified the payment schedule of the

23   Distribution Agreement. Though not a party to the original Distribution Agreement, Sigmax

24   America became a party to and/or an express intended third party of the obligations created via

25   Payment Plan Addendum, including Schutt's obligations to pay Sigmax America for the

26   products Sigmax America shipped to it according to the payment schedule set forth within the

27   Payment Plan Addendum.

28

- 12 -

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
Tel. 714-839-3800 • FAX 714-795-2995

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
Tel. 714-839-3800 • FAX 714-795-2995

48.    The Distribution Agreement and the Payment Plan Addendum thereto constitutes an enforceable agreement.

49.    Sigmax America has performed or substantially performed all obligations required of it under the Distribution Agreement and the Payment Plan Addendum, except those obligations that the performance of which is excused by Schutt's breaches of the Distribution Agreement and the Payment Plan Addendum.

50.    Schutt and Does 1 – 50, and each of them, materially breached the Distribution Agreement and the Payment Plan Addendum with respect to Sigmax America by, among other things:

a)    Failing to pay all amounts due and owing to Sigmax America in violation Section 9.2 of the Distribution Agreement and the Payment Plan Addendum; and

b)    Failing to return the unsold ZAMST Products shipped to Schutt by Sigmax America after Plaintiffs requested such return pot-termination in violation of Section 10.7(ii) of the Distribution Agreement.

51.    As a direct and proximate result of the foregoing breaches, Sigmax America has been damaged in an amount according to proof at trial, and will continue to suffer damages as a result of the foregoing breaches.

52.    Sigmax America has no adequate remedy at law for Schutt's and DOES 1 – 50's breaches set forth above, including, but not limited to, the breaches via the refusal to return the unsold Sigmax America ZAMST Products. Therefore, in addition to its claims for payments due and owing, Sigmax America is entitled to preliminary and permanent injunctive relief enjoining Schutt, DOES 1 – 50, and all those working in concert with them from selling, disposing of, or transferring title to any of the unsold ZAMST Products Sigmax America has requested the return of.

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THIRD CAUSE OF ACTION

### Fraud--Intentional Misrepresentation

(Asserted Against All Defendants by Nippon Sigmax)

53.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 52 as though fully set forth herein.

54.    On or about October 7, 2019, Schutt's CEO, Erb, contacted Plaintiffs' representatives, including Hajime Takada to solicit a change in the payment plan schedule set forth within Exhibit E to the Distribution Agreement. This prompted multiple teleconferences and e-mails between Erb, Mr. Takada, Plaintiffs' other representatives, and specifically represented on behalf of Schutt that Schutt had the financial ability to pay in accordance with the Payment Plan Addendum.

55.    At the time that Erb and Schutt made these representations, Erb and Schutt knew that Schutt lacked the financial ability to pay Plaintiffs in accordance with the schedule set forth within the Payment Plan Addendum. Via these false representations, Erb and Schutt intended to induce Nippon Sigmax to ship as much additional ZAMST Products as possible for Schutt to use for its financial benefit without any intention of paying Nippon Sigmax for the ZAMST Products that Nippon Sigmax thereafter shipped to it.

56.    At the time Erb and Schutt made these representations, Nippon Sigmax was ignorant of their falsity, and could not have in the exercise of reasonable diligence discovered the falsity of Defendants' representations.

57.    In reliance on Erb's and Schutt's misrepresentations, Nippon Sigmax entered into the Payment Plan Addendum and shipped ZAMST Products to Schutt thereafter. Had Nippon Sigmax known the truth of Defendants' misrepresentations, it would not have entered into the Payment Plan Addendum and would not have shipped any more ZAMST Products to Schutt.

58.    As a direct and proximate result of Defendants' misrepresentations, Nippon Sigmax has been damaged in an amount according to proof at trial in excess of the minimum jurisdiction of this Court.

59.    Defendants' actions were fraudulent, malicious, unconscionable and oppressive,

- 14 -

COMPLAINT

1  and were undertaken with conscious disregard for Nippon Sigmax's well-being.  Therefore, these

2  actions entitle Nippon Sigmax to an award of an exemplary and punitive damages in an amount

3  appropriate to punish or make an example of Defendants according to proof.

### FOURTH CAUSE OF ACTION

**Fraud--Intentional Misrepresentation**

(Asserted All Defendants By Sigmax America)

7      60.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 59 as

8  though fully set forth herein.

9      61.    On or about October 7, 2019, Schutt's CEO, Erb, contacted Plaintiffs'

10  representatives, including Hajime Takada to solicit a change in the payment plan schedule set

11  forth within Exhibit E to the Distribution Agreement.  This prompted multiple teleconferences

12  and e-mails between Erb, Mr. Takada, Plaintiffs' other representatives, and specifically

13  represented on behalf of Schutt that Schutt had the financial ability to pay in accordance with the

14  Payment Plan Addendum.

15      62.    At the time that Erb and Schutt made these representations, Erb and Schutt knew

16  that Schutt lacked the financial ability to pay Plaintiffs in accordance with the schedule set forth

17  within the Payment Plan Addendum.  Instead, Erb and Schutt intended to induce Sigmax

18  America to ship as much additional ZAMST Products as possible for Schutt to use for its

19  financial benefit without any intention of paying Sigmax America for the ZAMST Products that

20  Sigmax America thereafter shipped to it.

21      63.    At the time Erb and Schutt made these representations, Sigmax America was

22  ignorant of their falsity, and could not have in the exercise of reasonable diligence discovered the

23  falsity of Defendants' representations.

24      64.    In reliance on Erb's and Schutt's misrepresentations, Sigmax America entered

25  into the Payment Plan Addendum and shipped ZAMST Products to Schutt thereafter.  Had

26  Sigmax America known the truth of Defendants' misrepresentations, it would not have entered

27  into the Payment Plan Addendum and would not have shipped any more ZAMST Products to

28  Schutt.

FORTIS LLP
650 Town Center Drive, Suite 1530
Costa Mesa, California 92626
Tel. 714-839-3800 • Fax 714-795-2995

- 15 -
COMPLAINT

65.    As a direct and proximate result of Defendants' misrepresentations, Sigmax America has been damaged in an amount according to proof at trial in excess of the minimum jurisdiction of this Court.

66.    Defendants' actions were fraudulent, malicious, unconscionable and oppressive, and were undertaken with conscious disregard for Sigmax America's well-being. Therefore, these actions entitle Sigmax America to an award of an exemplary and punitive damages in an amount appropriate to punish or make an example of Defendants according to proof.

## FIFTH CAUSE OF ACTION

### Fraud—Promise Without Intention To Perform

(Asserted Against All Defendants by Nippon Sigmax)

67.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 66 as though fully set forth herein.

68.    On or about October 7, 2019, Schutt's CEO, Erb, contacted Plaintiffs' representatives, including Hajime Takada to solicit a change in the payment plan schedule set forth within Exhibit E to the Distribution Agreement. This prompted multiple teleconferences and e-mails between Erb, Mr. Takada, Plaintiffs' other representatives, and specifically represented on behalf of Schutt that Schutt would pay Nippon Sigmax in accordance with the Payment Plan Addendum.

69.    At the time that Erb and Schutt made these promises, Erb and Schutt had no intention of performing. Instead, Erb and Schutt intended to induce Nippon Sigmax to ship as much additional ZAMST Products as possible for Schutt to use for its financial benefit without any intention of paying Nippon Sigmax for the ZAMST Products that Nippon Sigmax thereafter shipped to it.

70.    At the time Erb and Schutt made these promises, Nippon Sigmax was ignorant of Defendants' secret intention not to perform, and could not have in the exercise of reasonable diligence discovered Defendants' secret intention not to perform.

71.    In reliance on Erb's and Schutt's false promises, Nippon Sigmax entered into the Payment Plan Addendum and shipped ZAMST Products to Schutt thereafter. Had Nippon

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

1    Sigmax known the truth of Defendants' secret intention not to perform, it would not have entered

2    into the Payment Plan Addendum and would not have shipped any more ZAMST Products to

3    Schutt.

4        72.    As a direct and proximate result of Defendants' false promises, Nippon Sigmax

5    has been damaged in an amount according to proof at trial in excess of the minimum jurisdiction

6    of this Court.

7        73.    Defendants' actions were fraudulent, malicious, unconscionable and oppressive,

8    and were undertaken with conscious disregard for Nippon Sigmax's well-being.  Therefore, these

9    actions entitle Nippon Sigmax to an award of an exemplary and punitive damages in an amount

10    appropriate to punish or make an example of Defendants according to proof.

## SIXTH CAUSE OF ACTION

### Fraud—Promise Without Intention To Perform

(Asserted against Schutt, Erb, and DOES 1 – 50 by Sigmax America)

14        74.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 73 as

15    though fully set forth herein.

16        75.    On or about October 7, 2019, Schutt's CEO, Erb, contacted Plaintiffs'

17    representatives, including Hajime Takada to solicit a change in the payment plan schedule set

18    forth within Exhibit E to the Distribution Agreement.  This prompted multiple teleconferences

19    and e-mails between Erb, Mr. Takada, Plaintiffs' other representatives, and specifically

20    represented on behalf of Schutt that Schutt would pay Sigmax America in accordance with the

21    Payment Plan Addendum.

22        76.    At the time that Erb and Schutt made these promises, Erb and Schutt had no

23    intention of performing.  Instead, Erb and Schutt intended to induce Sigmax America to ship as

24    much additional ZAMST Products as possible for Schutt to use for its financial benefit without

25    any intention of paying Sigmax America for the ZAMST Products that Sigmax America

26    thereafter shipped to it.

27

28

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

FORTIS LLP
650 TOWN CENTER DRIVE , SUITE 1530
COSTA MESA, CALIFORNIA 92626
Tel. 714-839-3800 • Fax 714-795-2995

77.     At the time Erb and Schutt made these promises, Sigmax America was ignorant of Defendants' secret intention not to perform, and could not have in the exercise of reasonable diligence discovered Defendants' secret intention not to perform.

78.     In reliance on Erb's and Schutt's false promises, Sigmax America entered into the Payment Plan Addendum and shipped ZAMST Products to Schutt thereafter.   Had Sigmax America known the truth of Defendants' secret intention not to perform, it would not have entered into the Payment Plan Addendum and would not have shipped any more ZAMST Products to Schutt.

79.     As a direct and proximate result of Defendants' false promises, Sigmax America has been damaged in an amount according to proof at trial in excess of the minimum jurisdiction of this Court.

80.     Defendants' actions were fraudulent, malicious, unconscionable and oppressive, and were undertaken with conscious disregard for Sigmax America's well-being.  Therefore, these actions entitle Sigmax America to an award of an exemplary and punitive damages in an amount appropriate to punish or make an example of Defendants according to proof.

## SEVENTH CAUSE OF ACTION

### CONVERSION

(Asserted Against Schutt And DOES 1 – 50 By Nippon Sigmax)

81.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 80 as though fully set forth herein.

82.     As alleged above, Nippon Sigmax had an ownership interest in, and a right of possession to the ZAMST Products it transferred to Schutt following the Payment Plan Addendum.

83.     Nippon Sigmax has demanded the return of the ZAMST Products, but Defendants have failed to return any of the ZAMST Products whatsoever.

84.     As a direct and proximate result of Schutt's conversion of the ZAMST Products, Nippon Sigmax has been damaged in amount to be proven at trial in excess of the minimum jurisdiction of this court.

FORTIS LLP
650 TOWN CENTER DRIVE · SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 · FAX 714-795-2995

85.    Schutt's and DOES 1- 50's actions were fraudulent, malicious, unconscionable and oppressive, and were undertaken with conscious disregard for Nippon Sigmax's well-being. Therefore, these actions entitle Nippon Sigmax to an award of an exemplary and punitive damages in an amount appropriate to punish or make an example of Schutt and DOES 1 - 50 according to proof.

## EIGHTH CAUSE OF ACTION

## CONVERSION

(Asserted Against Schutt And DOES 1 – 50 By Sigmax America)

86.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 85 as though fully set forth herein.

87.    As alleged above, Sigmax America had an ownership interest in, and a right of possession to the ZAMST Products it transferred to Schutt following the Payment Plan Addendum.

88.    Sigmax America has demanded the return of the ZAMST Products, but Defendants have failed to return any of the ZAMST Products whatsoever.

89.    As a direct and proximate result of Schutt's conversion of the ZAMST Products, Sigmax America has been damaged in amount to be proven at trial in excess of the minimum jurisdiction of this court.

90.    Schutt's and DOES 1 – 50's actions were fraudulent, malicious, unconscionable and oppressive, and were undertaken with conscious disregard for Sigmax America's well-being. Therefore, these actions entitle Sigmax America to an award of an exemplary and punitive damages in an amount appropriate to punish or make an example of Schutt and DOES 1 – 50 according to proof.

## NINTH CAUSE OF ACTION

## CIVIL REMEDY UNDER PENAL CODE § 496(c)

(Asserted Against Schutt And DOES 1 – 50 By Nippon Sigmax and Sigmax America)

91.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 90 as though fully set forth herein.

- 19 -
COMPLAINT

92.     As alleged above, Schutt acquired the ZAMST Products in which Plaintiffs had an ownership interest via the fraudulent misrepresentations and false promises alleged above, which constitutes theft by false pretenses.  In so acting, Schutt's conduct violated Penal Code Sections 484(a) and 496(a) in that Schutt knowingly received property that was stolen or obtained in a manner constituting theft or extortion.

93.     As a direct and proximate result of the fraudulent actions of Schutt as described above, Plaintiffs have suffered damages in an amount according to proof at trial, and Plaintiffs have a private right of action under Penal Code § 496(c) to recover an award of treble damages and attorneys' fees.

## TENTH CAUSE OF ACTION

### Common Count—Good and Services Rendered

(Asserted against Schutt and DOES 1 – 50 by Nippon Sigmax)

94.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 93 as though fully set forth herein.

95.     As alleged above, Schutt requested that Nippon Sigmax deliver the ZAMST Products for the benefit of Defendant via purchase orders made pursuant to the Distribution Agreement and the Payment Plan Addendum.

96.     Nippon Sigmax delivered the ZAMST Products to Schutt as Schutt requested.

97.     Schutt has not paid Nippon Sigmax for the balance of the ZAMST Products.

98.     The balance of the amount owed on the Products has a reasonable value of $493,053.

99.     Nippon Sigmax therefore requests that the Court order Schutt to pay Nippon Sigmax $493,053 for the reasonable value of the ZAMST Products, plus prejudgment interest thereon.

/ / /

/ / /

/ / /

/ / /

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

FORTIS LLP
650 TOWN CENTER DRIVE , SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ELEVENTH CAUSE OF ACTION

### Common Count—Good and Services Rendered

(Asserted against Schutt and DOES 1 – 50 by Sigmax America)

100. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 99 as though fully set forth herein.

101. As alleged above, Schutt requested that Sigmax America deliver the ZAMST Products for the benefit of Defendant via purchase orders made pursuant to the Distribution Agreement and the Payment Plan Addendum.

102. Sigmax America delivered the ZAMST Products to Schutt as Schutt requested.

103. Schutt has not paid Sigmax America for the balance of the ZAMST Products.

104. The balance of the amount owed on the Products has a reasonable value of $2,116,118.

105. Sigmax America therefore requests that the Court order Defendant to pay Sigmax America $2,116,118 for the reasonable value of the ZAMST Products, plus prejudgment interest thereon.

## TWELFTH CAUSE OF ACTION

### Trademark Infringement– 15 U.S.C. § 1114(1)

(Asserted against Schutt and Does 1 – 50 by Nippon Sigmax)

106. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 105 as though fully set forth herein.

107. Nippon Sigmax is the owner of and has the exclusive right to use and license to others the ZAMST Marks, which are registered in the United State Patent and Trademark Office pursuant to the Lanham Act (15 U.S.C. § 1051 and 1053). The ZAMST Marks are also incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

108. Nippon Sigmax has given notice to the public of the registration of the ZAMST Marks as provided in the Lanham Act, 15 U.S.C. § 1111. In addition, the registration of the ZAMST Marks operates as constructive notice, to Schutt and anyone else, of Nippon Sigmax's claim of ownership of the ZAMST Marks, pursuant to 15 U.S.C. § 1072. The certificates of

registration of the marks are prima facie evidence of the validity of the registered marks, the registration of the marks, of Nippon Sigmax's ownership of the ZAMST Marks, and of Nippon Sigmax's exclusive right to use the registered marks in commerce on or in connection with the goods or services specified in the certificates, pursuant to 15 U.S.C. §1057. In addition, Schutt was given actual notice of Nippon Sigmax's exclusive ownership of the ZAMST Marks via the Distribution Agreement.

109.    Nippon Sigmax has developed the ZAMST Marks at great expense, such that they are valuable and irreplaceable assets today. The ZAMST Marks have become favorably known in the minds of the purchasing public generally throughout the United States as indicating the source, origin, and quality of Nippon Sigmax's goods.

110.    As alleged above, Schutt has used in commerce, and continues to use without Nippon Sigmax's permission, the ZAMST Marks in a manner that is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, or association of Nippon Sigmax with Schutt and/or Schutt's products. Schutt also did so after the termination of the Distribution Agreement when its license to use the ZAMST Marks was revoked. Schutt's actions constitute infringement on the ZAMST Marks under Section 32 of the Lanham Act (15 U.S.C. § 1114).

111.    As a direct and proximate result of Schutt's and Does 1 – 50's acts of infringement on the ZAMST Marks, Nippon Sigmax has been damaged, and continues to be damaged in an amount to be proven at trial.

112.    In addition, given Nippon Sigmax's Notice of Termination Letter requesting that Schutt discontinue using the ZAMST Marks, Schutt has engaged in the aforementioned infringing conduct willfully, with malice and in bad faith such that Nippon Sigmax is entitled to damages allowed under 15 U.S.C. § 1117, including but not limited to compensatory damages suffered as a result of Schutt's acts of infringement, disgorgement of their profits, trebled profits or damages (whichever amount is greater), reasonable attorneys' fees, costs, and prejudgment interest.

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA, 92626
TEL 714-839-3800 · FAX 714-795-2995

113.    Notwithstanding its entitlement to monetary relief, Schutt's acts of infringement of the ZAMST Marks also have caused and will continue to cause irreparable injury to Nippon Sigmax if not restrained by this Court.  Nippon Sigmax has no adequate remedy at law, and therefore seeks preliminary and permanent injunctive relief under 15 U.S.C. § 1116.

## THIRTEENTH CAUSE OF ACTION

### False Designation/Unfair Competition – 15 U.S.C. § 1125(a)

(Asserted Against Schutt And DOES 1 – 50 By Nippon Sigmax)

114.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 113 as though fully set forth herein.

115.    Nippon Sigmax is the owner of and has the exclusive right to use and license to others the ZAMST Marks, which are registered in the United State Patent and Trademark Office pursuant to the Lanham Act (15 U.S.C. § 1051 and 1053).

116.    Schutt and DOES 1 –50 have, without authorization or in connection with its goods and services, used in commerce the ZAMST Marks and/or made false designation of origin which are likely to cause confusion, mistake or to deceive as to the affiliation, connection or association of Schutt with Nippon Sigmax as to the origin, sponsorship or approval of Nippon Sigmax's goods or commercial activities.

117.    Schutt and DOES 1 – 50 have taken these actions with the intent and purpose of misleading the public, and their use of the ZAMST Marks are false designations of origin and/or false or misleading representations, and constitute the utilization of false or misleading descriptions and representations in interstate commerce because Schutt and DOES 1 – 50 have represented, and continue to represent that they are a ZAMST distributor to retailers and to the general public.  As such, Defendants' actions are in violation of 15 U.S.C. § 1125(a).

118.    Defendants have caused, and will continue to cause irreparable injury to Nippon Sigmax unless restrained by this Court.  Nippon Sigmax has no adequate remedy at law, and therefore seeks injunctive relief under 15 U.S.C. § 1116.

FORTIS LLP
650 TOWN CENTER DRIVE , SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

119.    Defendants' acts of infringement on the ZAMST Marks and trade name have been deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

120.    Nippon Sigmax is entitled to recover from Schutt and DOES 1 – 50, damages allowed under 15 U.S.C. § 1117, including but not limited to compensatory damages suffered as a result of Schutt's and DOES 1 – 50's acts of unfair competition, disgorgement of their profits, trebled profits or damages (whichever amount is greater), reasonable attorneys' fees, costs, and prejudgment interest.

## FOURTEENTH CAUSE OF ACTION

### Common Law Trademark Infringement

(Asserted Against Schutt and DOES 1 – 50 by Nippon Sigmax)

121.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120 as though fully set forth herein.

122.    Nippon Sigmax has the exclusive rights, title and interest in the ZAMST Marks and the ZAMST brand name, as well as all other ancillary signs, symbols or other indicia used in connection or conjunction with said marks used by Nippon Sigmax by virtue of Nippon Sigmax's extensive sale and distribution of products and services bearing such service marks, trade names, copyrights and all ancillary signs, symbols, or other indicia used in connection or conjunction with said marks (collectively the "ZAMST Common Law Trademarks") as set forth in the preceding paragraphs of this Complaint.

123.    Schutt's and DOES 1 – 50's above-described use of the ZAMST Common Law Trademarks constitutes common law trademark infringement and unfair competition.

124.    It is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the infringing products and to cause the public to believe that Schutt remains an authorized ZAMST distributor.

125.    By such actions of infringing upon the ZAMST Common Law Trademarks, Schutt and DOES 1 – 50 are improperly trading upon Nippon Sigmax's reputation and goodwill and is impairing Nippon Sigmax's valuable rights to the ZAMST Common Law Trademarks.

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA, 92626
TEL 714-639-3800 • FAX 714-795-2995

126.     These activities of Schutt and DOES 1 – 50 constitute willful and intentional acts of infringement of the ZAMST Common Law Trademarks and unfair competition in total disregard of Nippon Sigmax's proprietary rights, and were done with Schutt's and DOES 1 – 50's knowledge that the use of the ZAMST Common Law Trademarks or any reproduction, copy, or colorable imitation thereof was and is in direct contravention of Nippon Sigmax's rights.

127.     As a direct and proximate cause of all of the conduct described above, Nippon Sigmax has been damaged in an amount to be determined at trial.

128.     Further, Nippon Sigmax has no adequate remedy at law.  Schutt's and DOES 1 – 50's infringing conduct has caused and, if not enjoined, will continue to cause, irreparable harm and damage to the rights of Nippon Sigmax and the ZAMST Common Law Trademarks and to the business, reputation and goodwill of Nippon Sigmax.

129.     By reason of the forgoing, Nippon Sigmax is entitled to preliminary and permanent injunctive relief against Schutt and Nippon Sigmax in order to restrain further acts of trademark infringement.

### FIFTEENTH CAUSE OF ACTION

**Unfair Competition and False Advertising –Cal. Bus. & Prof. Code §§ 17200 *et seq.* and 17500 *et seq.***

(Asserted Against Schutt And DOES 1 - 50 By Nippon Sigmax)

130.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 129 as though fully set forth herein.

131.     Schutt's and DOES 1 – 50's actions described above, and specifically, without limitation, Schutt's and DOES 1 – 50's use of the ZAMST Marks and the ZAMST trade name in commerce after the termination of the Distribution Agreement to advertise, market, and hold itself out as a ZAMST distributor constitutes trademark infringement, false advertising, and unfair competition in violation of the laws of the State of California.

132.     By these actions, Schutt and DOES 1 – 50 have engaged in false advertising and unfair competition in violation of California Business & Professions Code §§ 17200 and 17500 *et*

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

1    *seq.*, and as a result, Nippon Sigmax has suffered and will continue to suffer damage to its

2    business, reputation, and good will.

3           133.    As a direct and proximate result of Schutt's and DOES 1 – 50's infringing

4    conduct, Nippon Sigmax has been damaged in an amount to be determined at trial, and will suffer

5    irreparable harm if Schutt and DOES 1 – 50 are not enjoined from such infringing conduct.

### SIXTEENTH CAUSE OF ACTION

**Unfair Business Practices –Cal. Bus. & Prof. Code §§ 17200 *et seq.***

(Asserted Against All Defendants By Nippon Sigmax and Sigmax America)

9          134.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 133 as

10    though fully set forth herein.

11          135.    As alleged above, Defendants have engaged in deceitful, deceptive, unfair, and/or

12    unlawful practices which have caused Plaintiffs to suffer actual injury in fact and lose money or

13    property.

14          136.    The foregoing conduct of Defendants constitutes unfair business practices and/or

15    unfair competition under California Business and Professions Code §§ 17200 *et seq.*

16          137.    Defendants have acquired money or property or other benefits in amounts to be

17    proven at trial as a direct and proximate result of their unfair competition and/or unfair business

18    practices directed at Plaintiffs.

19          138.    Defendants should be ordered to restore and/or disgorge to Plaintiffs all money or

20    property or other benefits gained by them as a direct and proximate result of their unfair

21    competition and/or unfair business practices directed at Plaintiffs.  Defendants should also be

22    enjoined from further engaging in the foregoing acts of unfair business practices or unfair

23    competition.

### SEVENTEENTH CAUSE OF ACTION

**Accounting**

(Against All Schutt And DOES 1 – 50 BY Nippon Sigmax And Sigmax America)

26          139.    Plaintiffs re-allege and incorporates by reference paragraphs 1 through 139 as

27    though fully set forth herein.

FORTIS LLP
650 Town Center Drive, Suite 1530
Costa Mesa, California 92626
Tel. 714-839-3800 • Fax 714-795-2995

- 26 -
COMPLAINT

140.    As alleged above, Schutt and Does 1 – 50 are indebted to Plaintiffs.

141.    The exact amount of monies due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of Schutt's and DOES 1 – 50's operations with respect to the sale of the ZAMST Products.

142.    Accordingly, the Court should order an accounting of Schutt's and DOES 1 – 50's operations with respect to the sale of the ZAMST Products and order Schutt and DOES 1 - 50 to pay over to Plaintiffs, all amounts due and owing to Plaintiffs, plus interest thereon.

## DEMAND FOR JURY TRIAL

143.    Plaintiffs demand a jury trial on all issues so triable;

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    For compensatory damages in an amount to be proven at trial;

2.    For disgorgement of profits;

3.    For treble damages and trebled profits;

4.    For punitive and exemplary damages;

5.    For preliminary and permanent injunctive relief, enjoining Defendants from:

   a) Breaching the post-termination obligations within the Distribution agreement;

   b) Continuing to use the ZAMST Marks, continuing to advertise the ZAMST Products for sale, and continuing to holding itself out as ZAMST distributor; and

   c)    Selling, disposing of, or transferring title to any of the unsold ZAMST Products that Plaintiffs have requested the return of.

6.    For a Court order directing Schutt to pay Nippon Sigmax $493,053 for the balance of the reasonable value of the ZAMST Products, plus interest thereon.

7.    For a Court order directing Schutt to pay Sigmax America $2,116,118 for the balance of the reasonable value of the ZAMST Products, plus interest thereon.

8.    For an order that Defendants restore and/or disgorge to Plaintiffs, all money or property or other benefits gained as a result of their unfair competition;

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995

- 27 -
COMPLAINT

9.    For an accounting of Defendants' operations and an order that Defendants pay over to USSD, all amounts due and owing to USSD, plus interest thereon.

10.    For reasonable costs and attorney's fees incurred in this action pursuant to 15 U.S.C. § 1117 and pursuant to Penal Code § 496(c);

11.    For prejudgment interest and cost of suit herein; and

12.    For such other and further relief as the Court may deem necessary and proper.

DATED:  December 4, 2020

FORTIS LLP

By: _____

Eric J. Hardeman
Adam Harris
Attorneys for Plaintiffs

FORTIS LLP
650 TOWN CENTER DRIVE, SUITE 1530
COSTA MESA, CALIFORNIA 92626
TEL 714-839-3800 • FAX 714-795-2995