**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>KRANOS CORPORATION,<br>         Debtor. | Chapter 7<br>Case No. 20-13144 (BLS) |
| ROBERT ERB,<br>         Plaintiff,<br>v.<br>KRANOS CORPORATION IN CARE OF ITS CHAPTER 7 TRUSTEE, NIPPON SIGMAX CO., LTD, a Japanese corporation, and SIGMAX AMERICA, Inc., a California corporation,<br>         Defendants. | Adv. Proc. Case No. 21-50997 (BLS) |

**OBJECTION TO MOTION TO EXTEND AUTOMATIC STAY AND FOR PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

Petitioner Robert Erb's ("Erb") Adversary Action and Motion to Extend the Automatic Stay (the "Motion") filed against Creditors/Defendants Nippon Sigmax Co. Ltd and Sigmax America, Inc. (collectively the "Sigmax Entities") are merely ill-conceived efforts to delay the inevitable prosecution of the Sigmax Entities' lawsuit against pending in the Central District of California against Erb (the "California Action"), and there is no basis for either enjoining the California Action or extending the automatic stay to Erb.  The Court should deny Erb's Motion for several reasons:

- **First,** Erb's entire Motion is premised on the false suggestion that the debtor, Kranos Corporation ("Kranos"), somehow remains in business, that it is being reorganized, and that Erb continues to have some sort of operational role as if this were a Chapter 11 proceeding.  However, this is a Chapter 7 case with a no-asset estate. The only assets of the estate were abandoned by the Trustee, Kranos is no longer operating, and Erb has no operational role with Kranos.  Thus, none of the authority Erb relies on (which exclusively deals with Chapter 11 reorganizations with officers and directors involved in the restructuring) in support of his Motion

1

applies here, as there is no pending or anticipated reorganization, and no assets to reorganize even if there were.

- **Second**, Erb cannot demonstrate a likelihood of success because this factor examines the likelihood of success of a successful reorganization. Since this is a Chapter 7 proceeding and there is no reorganization nor assets to reorganize, that likelihood is zero.

- **Third,** Erb's argument that litigation against him as a non-debtor will somehow prejudice the Trustee's efforts to administer the estate is unsupported by any evidence, much less an explanation of what "valuable resources" will be diverted from the estate or how the California Action would divert those resources. Indeed, the claims in the California Action and in the forthcoming First Amended Complaint in the California Action against Erb are premised on his *own* fraud and wrongful conduct.

- **Fourth,** Erb's argument that the automatic stay applies to him or should be extended to him because of indemnity rights he has against Kranos is simply a red herring. Erb is simply too late for seeking indemnity from Kranos **<u>since he never filed a proof of claim and the deadline for doing so has expired.</u>** Even assuming *arguendo* that his Adversary Action complaint (the "Complaint") is the proper vehicle to seek such indemnity (which it is not), the Complaint neither pleads or prays for indemnity for Erb from Kranos, nor any other legal or equitable remedy against Kranos.

- **Finally,** Erb's argument that the automatic stay applies to him or should extend to him because he shares an "identity of interest" with Kranos is unsupported by any evidence to show that a judgment against Erb would effectively mean a judgement against Kranos (i.e., that they are *alter egos* of each other). Moreover, Erb's argument in this respect is part and parcel with his meritless arguments that a

standard applicable to a Chapter 11 reorganization should apply to a no-asset Chapter 7 case.

Accordingly, the Court should deny Erb's Motion and dismiss Erb's Complaint with prejudice.

## II. BACKGROUND

### A. THE CALIFORNIA ACTION AND THE CURRENT STATUS THEREOF

A detailed summary of the background of the California Action and the dispute between the Sigmax Entities and Erb is set forth within the Sigmax Entities' pending Motion for Relief from Stay, which is set to be heard concurrently with this Motion. For the sake of brevity, the only claims alleged against Erb in the California action are claims for Erb's *own* fraudulent misrepresentations and false promises and violations of California's unfair competition law as codified in California Business & Professions Code §§ 17200 *et seq.* predicated on that fraud. There are no *alter ego* allegations alleged against Erb as being the *alter ego* of Kranos, nor of Kranos being the *alter ego* of Erb. As explained herein, California law provides for a separate and distinct tort action against officers and directors of a corporation in their individual capacities who commit fraud, whether or not they were acting in any official capacity on behalf of any business entity.

The California Action has also been set for trial following a Rule 16(b) scheduling conference, the Sigmax Entities have propounded written discovery to Erb, and Erb has propounded written discovery to the Sigmax Entities. [Declaration of Eric J. Hardeman Decl. ¶ 2]. The California Action is therefore well under way. Though not binding on this Court, the court in the California Action has already been presented with the identical argument Erb makes here (i.e., that the claims against him violate the automatic stay), but declined to stay the California Action. [Hardeman Decl. ¶ 3, Ex. 1].

**B.    KRANOS IS NO LONGER AN OPERATIONAL ENTITY, IT IS NOT BEING REORGANIZED, AND ERB HAS NO OPERATIONAL ROLE THEREIN**

At the section 341 meeting of creditors, the Kranos chief reorganization officer testified that Kranos was no longer an operating entity. [Hardeman Decl. ¶ 4]. Kranos' Chapter 7 petition also listed no assets beyond a lease interest and physical inventory belonging to the Sigmax Entities - these assets were subsequently abandoned by the Trustee, and they are no longer assets of the estate. [Docket No. 41]. Kranos also *cannot* be an operating entity, as its assets were transferred to a third party mezzanine creditor, Innovatus Capital Partners, LLC shortly before the filing of the Chapter 7 petition, and then to a new entity, Certor Sports, LLC. [Hardeman Decl. Exs. 2, 3].

### III.    ARGUMENT

**A.    THE AUTOMATIC STAY DOES NOT APPLY TO NON-DEBTORS SUCH AS ERB AS A MATTER OF LAW**

It is well recognized in this Circuit that the automatic stay of Section 362 does not apply to non-debtors such as Erb. *In re DESA Holdings Corp.*, 353 B.R. 419, 425 (Bankr. D. Del. 2006) ("It is a tenet of bankruptcy law that the automatic stay provisions of § 362 of the Bankruptcy Code apply only to debtors and do not prevent litigation from proceeding against non-debtors."); *see also In re Uni-Marts*, LLC, 399 B.R. 400, 415 (Bankr. D. Del. 2009) ("In general, only the debtor is afforded the protections of the automatic stay under section 362; conversely, third-parties do not receive the protection of the automatic stay."). Significantly, "the automatic stay is not available to nonbankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor." *In re Conf. of Afr. Union First Colored Methodist Protestant Church*, 184 B.R. 207, 217 (Bankr. D. Del. 1995).

In being permitted to pursue the non-debtor co-defendants of a debtor in State or Federal courts, "discovery pertaining to claims against the bankrupt's codefendants is not stayed, even if the discovery requires a response from the debtor, and even if the information could later be used against the debtor." *In re Poopple,* 532 B.R. 581, 587 (Bankr. M.D. Penn. 2015) *quoting In re Richard B. Vance and Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003).[1]

---

[1] Both Erb and the Trustee (via the Trustee's recent objection to the Sigmax Entities' Motion for relief from stay) have made the argument that the Trustee's involvement will somehow be necessary for discovery in the California

Here, Erb is a non-debtor and his position as a former officer and director of Kranos does not stay the claims against him in the California Action even if Erb is "in a similar legal or factual nexus" with Kranos. Accordingly, Erb must demonstrate that there is a valid basis to extend the provisions of the automatic stay to apply to him. As explained below, he has failed to do so and cannot do so based on the facts and circumstances presented before this Court.

**B.    ERB HAS FAILED TO DEMONSTRATE THE REQUITE UNUSUAL CIRCUMSTANCES THAT WOULD THAT WOULD JUSTIFY EXTENDING THE   AUTOMATIC STAY TO ERB AS A NON-DEBTOR**

   **1.    *Erb Is Improperly Seeking To Apply Inapposite Authority Regarding The Issuance Of   Section 105 Injunctions That Is Applicable To Chapter 11 Reorganizations While This  Is A No-Asset Chapter 7 Petition***

Notably, the authority Erb relies on does not apply to the present circumstances and is an effort to apply the standard for injunctive relief applicable to Chapter 11 cases rather than a Chapter 7 case. [See Mot. at pp. 4 – 5]. Indeed, all of the cases Erb relies on involved active, operating Chapter 11 debtors, requiring the services and resources of the officers and directors to aid in the ongoing operations and restructuring efforts in Chapter 11. It is for this reason that an automatic stay might be extended or claims against a non-debtor enjoined in the Chapter 11 context to protect the officer or director actively needed for such reorganization to succeed. However, that is not the case here—this is a Chapter 7 proceeding, Kranos is no longer operational, there are no assets in the estate, and Erb no longer occupies any operational role with Kranos. Thus, there is no pending or planned reorganization and there is nothing to reorganize even if there were. The cases Erb relies on are thus readily distinguishable as follows:

- *In re Johns-Manville Corp.,* 26 B.R. 420 (Bankr. S.D.N.Y. 1983) involved a Chapter 11 reorganization and a determination by the court that the claims against the non-debtor employees of the debtor "who [were] presently working for the

---

Action to proceed. However, neither of them have submitted any evidence of this, much less explained how the Sigmax Entities' discovery propounded to Erb or to any other non-debtor would require the Trustee's involvement in any respect. Significantly, the Sigmax Entities have not propounded any discovery to the Trustee in the California Action, nor would the Trustee's involvement be necessary, as Kranos and/or Erb presumably both retain access to and have taken all appropriate steps to preserve any business records and other electronically stored information that the Sigmax Entities have requested Erb to produce in discovery. [Hardeman Decl. ¶ 2].

company at very high levels in numerous divisions of the company" would "frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization." *Id.* at 426.

- *Sudbury, Inv. v. Escott,* 140 B.R. 461 (N.D. Ohio 1992) involved a Chapter 11 reorganization and a finding by the court that the prosecution of a suit against a debtor's director should be enjoined because the director had "an important full-time role in [the] Debtor's business and reorganization effort" and that the prosecution of claims against the director "would seriously impair [the] Debtor's 'breathing spell' and its reorganization." *Id.* at 467.

- *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) involved a Chapter 11 reorganization and an affirming of a district court's order that continuation of civil actions against the non-debtors "threatened property of [the] estate" and "rendered any plan of reorganization futile." *Id.* at 997.

- *In re Calpine Corp.*, 365 B.R. 401 (S.D.N.Y. 2007) involved a Chapter 11 reorganization and an affirming of a district court's order enjoining an action against a non-debtor director that represented threatened "irreparable harm to [the debtor's] reorganization process." *Id.* at 413.

- *Lazarus Burman Assocs.*, 161 B.R. 891 (Bankr. E.D.N.Y. 1993) involved a Chapter 11 reorganization and a finding that continuation of claims against the debtor's non-debtor principles would pose a threatened harm to the reorganization process because these principles "would be distracted both from the Debtors' daily business affairs and from the Debtors' progressing toward a plan of reorganization." *Id.* at 901.

- *New Jersey v*. W.R. Grace & Co., 412 B.R. 657 (D. Del. 2009) involved a Chapter 11 reorganization and a finding that claims against nondebtors would affect the debtor's reorganization efforts and assets within the bankruptcy estate. *Id.* at 688 – 669.

Though this is not all the cases relied on by Erb, it should be noted that the *only* case he cites to involving a Chapter 7 case is *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506 (3d Cir. 1997). However, even *McCartney* was merely citing to *A.H. Robins Co., supra,* (a Chapter 11 case) in generally discussing some of the circumstances in which courts will extend the automatic stay to a non-debtor. *Id.* at 510 quoting *A.H. Robins Co., supra,* 788 F.2d at 999.

Accordingly, Erb is seeking to apply the injunction standards applicable in Chapter 11 reorganization cases (i.e., a threat to the reorganization process) to a Chapter 7 no-asset case.

2.  *There Is No Likelihood Of Success Because The Likelihood Of Success Factor Involves The Likelihood Of Success Of A Successful Chapter 11 Reorganization*

In furtherance of his efforts to apply the wrong standard, Erb argues that there is a likelihood of success because "there is a likelihood that the Trustee's bankruptcy strategy will succeed in maximizing recoveries for stakeholders." (Mot. at p. 7). Other than this conclusory statement, Erb offers no evidence of this, particularly given that this is a no-asset estate. However, it would not matter even if Erb could muster evidence of the Trustee's strategy because the "likelihood of success" factor is a demonstration of the "likelihood of a successful reorganization." This is confirmed in the cases Erb relies on in discussing this factor. See *In re Lyondell Chem. Co.,* 402 B.R. 571, 589 (Bankr. S.D.N.Y 2009) (likelihood success factor is "a *reasonable* likelihood of a successful reorganization") (emphasis in original) (internal quotations omitted); *In re Saxby's Coffee Worldwide, LLC,* 449 B.R. 369, 379 (Bankr. E.D. Penn. 2009) (For a Section 105 injunction to issue retraining actions against non-debtors, "there must be a reasonable likelihood of successful reorganization."); *In re Union Trust Phila., LLC* 465 B.R. 765, 771 (Bankr.E.D. Penn. 2011) ("[T]here must be a reasonable likelihood of a successful reorganization" to demonstrate the "unusual circumstances" necessary for a Section 105 injunction.").

Accordingly, not only has Erb failed to establish a likelihood of success, the evidence presented here is that the likelihood of success is zero because there is no pending reorganization and no assets in the estate to reorganize.

3.  *Erb Has Failed To Demonstrate Any Irreparable Harm*

7

Next, Erb claims that both he and the estate would be irreparably harmed because the fraud allegations the Sigmax Entities assert against him in the California Action are "inextricably intertwined" with the claims against Kranos, and that "the Trustee will have to be involved in the litigation, including discovery , motions, and witness preparation, and trial[.]" (Mot. at p. 8). To start, Erb has presented no evidence whatsoever that the Trustee has, or will be required to participate in discovery, motion, practice, or trial in the California Action. The Trustee has also never made any such claim or objection to the California Action.

With regard to Erb's argument that the claims against him are inextricably intertwined with those asserted against Kranos and the propriety thereof, California law makes it clear that an officer or director of a corporation may be liable for his or her *own* fraud. *PMC, Inc. v. Kadisha*, 78 Cal.App.4th 1368, 1381 – 1382 (2000) ("All persons who are shown to have participated in an intentional tort are liable for the full amount of the damages suffered.") (citation omitted). "This rule applies to intentional torts committed by shareholders and those acting in their official capacities as officers or directors of a corporation[.]" *Id.* (emphasis added). Thus, this is a scenario where Erb is merely in "a similar legal or factual nexus with the debtor" and the automatic stay is unavailable to him as non-debtor. *See In re Conf. of Afr. Union First Colored Methodist Protestant Church*, *supra,* 184 B.R. at 217.

Erb's arguments that the estate would be harmed because a judgment against him would be res judicata or collateral estoppel against Kranos are similarly unavailing. The authority Erb relies on for this argument exclusively involves Chapter 11 reorganizations, an active business seeking to reorganize, and assets within the estate to reorganize. Here, there is no pending reorganization and nothing to reorganize even if there were. Thus, even assuming *arguendo* that a judgment against Erb is a judgment against Kranos, Erb has not made any showing that such a judgment would have any effect on the bankruptcy estate.

4. ***Erb's Indemnity Argument Is Misplaced And He Has Failed To File A Proof of Claim or Otherwise Request Indemnity From Kranos***

Next, Erb argues that Kranos "likely" has an obligation to indemnify Erb for liability in the California Action, which is essentially a "what if" argument. (Mot. at p. 11 – 12). However, Erb has not filed any proof of claim requesting indemnity or any other money from Kranos. The Complaint also does not plead for any indemnity against Kranos, nor any other legal or equitable remedy. [*See* Docket No. 58]. So, this is an argument about what Erb *might* do, something which he has not done, and something that it is too late for him to do in any case. Moreover, he has failed to cite to any authority suggesting that a Chapter 7 trustee must indemnify him with estate assets (of which there are none) for any judgment against him. Instead, all of the authority he relies involves Chapter 11 reorganizations and an operational business, i.e., an existing business against which indemnification might be sought and existing assets with which to indemnify the non-debtor. Moreover, any argument that such "indemnity" arises from any directors & officers insurance policy covering Erb such that it is purportedly an estate asset similarly would fail. *See SN Liquidation, Inc.* 388 B.R. 579, 584 (Bankr. Decl. 2008) ("[W]hen an insurance policy provides coverage only to directors and officers, courts generally hold that the proceeds are not property of the estate.").

Accordingly, Erb's "indemnity" argument is without merit and is simply a red herring.

**4.** ***Erb's Arguments That Litigation Against Him Will Divert Resources From The Estate Is In Reality A Misplaced Argument That The California Action Will Interfere With A Non-Existent Chapter 11 Reorganization***

Next, Erb argues that the California Action proceeding against him would prejudice the bankruptcy estate, but again relies exclusively on cases discussing threats to a Chapter 11 reorganization. (See Mot. at pp. 13 – 15). Again, there is no ongoing business or reorganization effort that requires Erb's participation or services, nor is there any business to reorganize based on these facts.

**5.** ***Extending The Stay To Erb Will Not Further Any Public Interest Because The "Public Interest" Factor Is The Public Interest In A Successful Reorganization***

9

Erb also argues that enjoining the California Action and extending the stay to him will promote the "public interest," but he again misapprehends what the "public interest" factor means in the context of seeking to extend the automatic stay to a non-debtor. (Mot at p. 16). "In the context of bankruptcy proceedings, the 'public interest' element means 'the promoting of a successful reorganization.' " *In re American Film Technologies*, 175 B.R. 847, 849 (Bankr. D. Del. 1994). Since there is neither any reorganization nor can there be any reorganization, extending the stay to Erb serves no public interest whatsoever.

6.  *The Sigmax Entities Stand To Be Prejudiced If The Automatic Stay Is Extended To Erb*

While there is clearly no threatened irreparable harm to any Chapter 11 reorganization efforts, there is a significant threat to the Sigmax Entities if they are not able to promptly proceed with their claims against Erb in the California Action given that witnesses may become unavailable over the passage of time and documents and electronically stored information lost and/or deleted. [Hardeman Decl. ¶ 5]. This risk is particularly significant given Kranos' Chief Restructuring Officer's testimony at the meeting of creditors that Kranos is no longer operational. [*Id.* ¶ 4].

Accordingly, the balance of the hardships favors the Sigmax Entities, and weighs against enjoining the California Action or extending the automatic stay to Erb.

B.  **ERB HAS FAILED TO ESTABLISH ANY IDENTITY OF INTEREST BETWEEN HIMSELF AND KRANOS**

Finally, Erb essentially regurgitates his prior arguments by arguing without any evidentiary support that there is an identity of interests between him and Kranos such that the automatic stay should be applied to him. By this argument, Erb simply runs into the same issues as explained above in that these types of considerations apply in Chapter 11 reorganizations rather than no-asset Chapter 7 petitions where there are no estate assets that are even affected. See *In re Continental Airlines,* 177 B.R. 475, 479 (D .Del. 1993) (Holding that the lawsuits against non-debtors gave rise "to an identity of interest between [the debtor] and the non-debtor defendants, that [the debtor]

is the real party defendant therein and that **those litigations will directly affect [the debtor], its assets and its ability to pursue a successful plan of reorganization**.") (emphasis added).

Here, not only has Erb failed to introduce any evidence that Kranos is the real party defendant in the California Action regarding claims that have been asserted against Erb *individually*, it would not matter if he could make such a showing, as he cannot show that the California action will directly affect Kranos, its assets, and its ability to pursue a successful plan or reorganization given that such assets or reorganization plan exist or will ever exist.

### III.    CONCLUSION

For the foregoing reasons, the Court should deny Erb's Motion and dismiss the Complaint with prejudice.

Dated: July 21, 2021
      Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*_____
Mary F. Caloway (DE No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Email: mcaloway@pszjlaw.com

        -and-

**FORTIS LLP**

Eric J. Hardeman (*pro hac granted*)
Paul R. Shankman (*pro hac granted*)
650 Town Center Drive, Suite 1530
Costa Mesa, CA  92626
Telephone: (714) 839-3800
Facsimile:  (714) 795-2995
Email:ehardeman@fortislaw.com;
pshankman@fortislaw.com

*Counsel for Creditors/Defendants Nippon Sigmax Co. Ltd. and Sigmax America, Inc.*

11